Jeffrey Chubak
Amini LLC
131 West 35th Street
12th Floor
New York, NY 10001
(212) 490-4700
jchubak@aminillc.com
Attorneys for Nondebtor Defendants

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>BARTON MARK PERLBINDER<br><div align="right">Debtor</div> | Chapter 11<br><br>25-bk-73317-ast |
| REPLACEMENT ASSOCIATES, LLC<br><div align="right">Plaintiff</div><br>v.<br>BARTON MARK PERLBINDER et al<br><div align="right">Defendants</div> | 25-ap-08094-ast |

**NONDEBTOR DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO DISMISS, OR ALTERNATIVELY ABSTAIN
<u>FROM HEARING OR EQUITABLY REMAND THIS ACTION</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 4

I.    THE AMENDED COMPLAINT SHOULD BE DISMISSED AS AGAINST THE NONDEBTOR DEFENDANTS ................................................................................ 4

    A.    Legal Standard ...................................................................................... 4

    B.    The Amended Complaint Should be Dismissed as Against Landlord ................... 5

        1.    The Breach of Lease Claim Should be Dismissed ..................................... 5

        2.    The Fraud Claim Should be Dismissed ..................................................... 6

        3.    The Promissory Estoppel Claim Should be Dismissed ........................... 10

    C.    The Amended Complaint Should be Dismissed as Against the Trustee Defendants and Stephen Perlbinder ............................................................................. 12

        1.    Plaintiff Failed to Plead Complete Domination ....................................... 12

        2.    Plaintiff Failed to Plead Commission of a Fraud or Wrong against Plaintiff .................................................................................................. 14

II.    ALTERNATIVELY, THIS COURT SHOULD ABSTAIN FROM HEARING THIS ACTION ............................................................................................................... 16

    A.    Abstention is Mandatory under 28 U.S.C. § 1334(c)(2) ...................................... 16

    B.    Alternatively, this Court Should Abstain under 28 U.S.C. § 1334(c)(1) or Equitably Remand under 28 U.S.C. § 1452(b) ................................................... 17

CONCLUSION .................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*900 Unlimited, Inc. v. MCI Telecom. Corp.*,
 215 A.D.2d 227 (1st Dep't 1995) ........................................... 9

*A.J.D. Bldg. LLC v. Ben–Harush*,
 227 A.D.3d 457 (1st Dept 2024) ............................................ 8

*Alpha GmbH & Co. Schiffsbesitz KG v. BIP Indus. Co.*,
 25 A.D.3d 344 (1st Dep't 2006) ............................................ 10

*Alpha GmbH & Co. Schiffsbesitz KG v. BIP Indus. Co.*,
 7 N.Y.3d 741 (2006) ...................................................... 10

*Aris Indus. v. 1411 Trizechahn-Swig*,
 294 A.D.2d 107 (1st Dep't 2002) ......................................... 10

*Arista Recs., LLC v. Doe 3*,
 604 F.3d 110 (2d Cir. 2010) ............................................. 16

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ...................................................... 5

*Atuahuene v. City of Hartford*,
 10 F. App'x 33 (2d Cir. 2001) .......................................... 13

*Barrett v. Freifeld*,
 77 A.D.3d 600 (2d Dep't 2010) ........................................... 10

*Barris v. Hamilton*,
 1999 WL 311813 (S.D.N.Y. May 17, 1999) ................................. 5

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ...................................................... 4

*Billy v. Consolidated Mach. Tool Corp.*,
 51 N.Y.2d 152 (1980) .......................................... 4, 12, 15

*Deylii v. Novartis Pharms. Corp.*,
 2014 WL 2757470 (S.D.N.Y. June 16, 2014) .............................. 1

*Goel v. Bunge, Ltd.*,
 820 F.3d 554 (2d Cir. 2016) ............................................. 5

*Bulkley v. Shaw*,
  289 N.Y. 133 (1942) ................................................................................................ 11

*Camofi Master LDC v. College P'ship, Inc.*,
  452 F. Supp. 2d 462 (S.D.N.Y. 2006) ...................................................................... 7

*In re Caulfield*,
  192 B.R. 808 (Bankr. E.D.N.Y. 1996) ...................................................................... 9

*Century Pacific, Inc. v. Hilton Hotels Corp.*,
  528 F. Supp. 2d 206 (S.D.N.Y. 2007) ...................................................................... 7

*Citizens United v. Schneiderman*,
  882 F.3d 374, 384-85 (2d Cir. 2018) ...................................................................... 16

*Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*,
  568 F. Supp. 2d 329 (S.D.N.Y. 2008) .................................................................... 11

*DeAngelis v. Corzine*,
  17 F. Supp. 3d 270 (S.D.N.Y. 2014) ...................................................................... 13

*In re Ebury St. Cap., LLC*,
  664 B.R. 639 (Bankr. S.D.N.Y. 2024) .............................................................. 17, 18

*Elliot Assoc., L.P. v. Hayes*,
  141 F. Supp. 2d 344 (S.D.N.Y. 2000) .................................................................... 13

*Elliot Assoc., L.P. v. Hayes*,
  26 F. App'x 83 (2d Cir. 2002) ................................................................................ 13

*Evergreen E. Coop v. Whole Foods Mkt., Inc.*,
  2023 WL 545075 (2d Cir. Jan. 27, 2023) .............................................................. 16

*In re Exeter Holding, Ltd.*,
  2013 WL 1084548 (Bankr. E.D.N.Y. Mar. 14, 2013) ............................................ 18

*Goldman Copeland Assoc. v. Goodstein Bros. & Co.*,
  268 A.D.2d 370 (1st Dep't 2000) .............................................................................. 2

*Green v. Warden, U.S. Penitentiary*,
  699 F.2d 364 (7th Cir. 1983) .................................................................................... 1

*Kahlon v. Yitzhak*,
  2025 WL 1566469 (E.D.N.Y. June 3, 2025) .......................................................... 19

*Kermanshah v. Kermanshah*,
  580 F. Supp. 2d 247 (S.D.N.Y. 2008) ...................................................................... 5

*Matter of Hennel*,
   29 N.Y.3d 487 (2017) ............................................................................................ 11

*Int'l Plaza Assoc., L.P. v. Lacher*,
   63 A.D.3d 527 (1st Dept 2009).................................................................................. 8

*Joseph P. Day Realty Corp. v. Lawrence Assoc.*,
   270 A.D.2d 140 (1st Dep't 2000) .............................................................................. 9

*Lead I JV, LP v. N. Fork Bank*,
   401 B.R. 571 (E.D.N.Y. 2009) ................................................................................. 16

*Merex A.G. v. Fairchild Weston Sys., Inc.*,
   29 F.3d 821 (2d Cir. 1994)........................................................................................ 11

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
   500 F.3d 171 (2d Cir. 2007)........................................................................................ 6

*MFW Associates, LLC v. Plausteiner*,
   2017 WL 1057311 (S.D.N.Y. Mar. 16, 2017) ............................................................ 6

*Morris v. New York State Dep't of Taxation and Finance*,
   82 N.Y.2d 135 (1993) ........................................................................................ 12, 14

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Red Apple Group, Inc.*,
   273 A.D.2d 140 (1st Dep't 2000) ............................................................................ 10

*In re Odonata Ltd.*,
   2023 WL 4239535 (Bankr. S.D.N.Y. June 28, 2023)................................................. 6

*Odonata Ltd. v. Baja 137 LLC*,
   206 A.D.3d 567 (1st Dep't 2022) ......................................................................... 8, 11

*Osuji v. HSBC Bank, U.S.A. N.A.*,
   580 B.R. 605, 612 (E.D.N.Y. 2018) ........................................................................ 18

*Palm Beach Strategic Income, LP v. Salzman*,
   2011 WL 1655575 (E.D.N.Y. May 2, 2011) .............................................................. 5

*Panthers Cp., LLC v. Jar 259 Food Corp.*,
   2023 WL 4823942 (E.D.N.Y. Mar. 6, 2023)............................................................ 19

*Preferred Const., Inc. v. Patriot Organization Inc.*,
   64 Misc.3d 1222(A) (Sup. Ct. Suffolk Co. 2019)..................................................... 12

*Ring v. Arts Int'l, Inc.*,
   7 Misc.3d 869 (Civ. Ct. N.Y. Co. 2004).................................................................... 9

*SPV Osus Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018) ................................................................. 17

*Thompson v. Glob. Contact Servs., LLC*,
    2021 WL 3425378 (E.D.N.Y. Aug. 4, 2021) ........................................... 1

*In re TransCare Corp.*,
    592 B.R. 272 (Bankr. S.D.N.Y. 2018) ................................................... 13

*Wolet Capital Corp. v. Walmart Inc.*,
    2021 WL 242297 (S.D.N.Y. Jan. 25, 2021) ........................................... 12

**Statutes and Rules**

FRCP 9027 ........................................................................................................ 2

FRCP 8 ............................................................................................................. 13

FRCP 9 ............................................................................................................. 13

FRCP 12 .......................................................................................................... 1, 4

General Obligations Law § 5-703 ................................................................... 3, 11

**Other Authorities**

Piercing the Corp. Veil § 2:35,
    "New York—New York courts' interpretations after the great trilogy" ................ 15

N.Y. Pattern Jury Instr.—Civil 2:266,
    "Liability for the Conduct of Another—Piercing the Corporate Veil" .................. 15

Defendants

- 210 East 86th Street Corp. ("Landlord"),

- Muffy Flouret as Trustee of the Muffy Flouret 2012 Family Trust and as Trustee of the Mark Perlbinder 2023 Irrevocable Trust,

- Stephen Perlbinder,

- Astrid Sabellarosa as Trustee of the Article 4 Trust under ASR 2020 Family Trust and as Trustee of the Stephen Perlbinder 2016 Family Trust F/B/O Astrid Sabellarosa, and

- Andrea Jo Stein as Trustee of the Article 4 Trust under AJS 2020 Family Trust and as Trustee of the Stephen Perlbinder 2016 Trust F/B/O Andrea Jo Stein

(together, the "Nondebtor Defendants") submit this memorandum of law in support of their motion to dismiss the amended complaint (ECF #1 PDF pp.8-40, "Amended Complaint"[1]) as against them pursuant to FRCP 12(b)(6), or alternatively abstain from hearing this action pursuant to 28 U.S.C. § 1334(c) or equitably remand this action pursuant to 28 U.S.C. § 1452(b).

### INTRODUCTION[2]

The gravamen of the Amended Complaint is that Landlord overcharged plaintiff Replacement Associates, LLC ("Plaintiff"), a dialysis facility owner (id. ¶1) for its first lease

---

[1] For ease of reference, the defined term Amended Complaint is hyperlinked to the version filed on the state court docket (Sup. Ct. N.Y. Co. Index 654792/2024 NYSCEF #72), which does not have the removal notice or supplemental summons prefixed to it. Except as otherwise indicated, all NYSCEF citations herein are to documents filed on the docket of the underlying state court action. The Court may take judicial notice of such documents pursuant to FRE 201. *E.g. Thompson v. Glob. Contact Servs., LLC*, 2021 WL 3425378, at *5 (E.D.N.Y. Aug. 4, 2021) ("public court records [are] routinely considered on motions to dismiss"); *Deylii v. Novartis Pharms. Corp.*, 2014 WL 2757470, at *4 (S.D.N.Y. June 16, 2014) ("The Court may also consider matters of which judicial notice may be taken, which includes documents filed in other courts"); *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983) ("federal courts may also take notice of proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue").

[2] This is the third motion to dismiss being made in this action. The first was fully briefed before the Amended Complaint was filed and the second was scheduled to be argued in state court on

extension period (February 2018-2023), and then destroyed its business by misrepresenting that Plaintiff would be given a "five year lease extension at a fair market rental rate" (id. ¶8) (or longer), as needed for Plaintiff to secure "a multi-million dollar joint venture partnership with the world's preeminent dialysis facility operator" (id. ¶1) (Plaintiff being unable to operate independently), and then reneging on that alleged deal.

The first claim seeks to hold all defendants (id. ¶183) liable for the alleged overcharge in relation to the first extension period, with Landlord liable under a contract theory (id. ¶181) and the other defendants liable under a veil piercing theory.

This claim is time barred, because this action was commenced over six years after rent was fixed at the offending level. *Goldman Copeland Assoc. v. Goodstein Bros. & Co.*, 268 A.D.2d 370, 371 (1st Dep't 2000). Plaintiff seeks to avoid dismissal, by not specifying when rent was raised to that level. (Amended Complaint ¶58, stating rent was raised "[t]hereafter" i.e. sometime after February 28, 2013.) But the initial complaint (NYSCEF #2, "Initial Complaint") alleged the rent raise was made "[b]y letter, dated April 11, 2018" (Initial Complaint ¶¶45, 147, citing NYSCEF #44, "April 11, 2018 Letter") and the April 11, 2018 Letter confirms as much. Plaintiff also waived this claim in the Lease Extension and Modification Agreement dated February 27, 2023 (NYSCEF #10, "Lease Extension"), which includes an acknowledgment that (id. ¶8) that Landlord is not in default of any terms of the lease (NYSCEF #9, "Lease") as of February 27, 2023.[3]

---

December 11, 2025 prior to the removal of this action. This third motion is being made pursuant to FRBP 9027(g)(2).

[3] The Lease, Lease Extension and April 11, 2018 Letter are attached to the Chubak Declaration as Exhibits 1-3. The Initial Complaint is attached as Exhibit 4.

The second and third claims seek to hold debtor Mark Perlbinder ("Debtor") and Landlord liable for the alleged destruction of Plaintiff's business under fraud and promissory estoppel theories, and the Trustee defendants and Stephen Perlbinder liable under a veil piercing theory, presumably because any claim to enforce any alleged preliminary agreement reached with the Debtor is barred by the statute of frauds, General Obligations Law ("GOL") § 5-703.

The underlying fraud claim fails as the alleged misrepresentations are not ones of present fact in that they concern future entry into a new lease instrument. Plaintiff claims it still has a valid fraud claim because it believes the Debtor knew the subject alleged promises would not be performed at the time they were made. But that does not satisfy plausibility requirements, because Plaintiff alleges the Debtor's plan was to personally profit from the transaction by capturing the broker commission for himself (Amended Complaint ¶¶7, 16-17, 75-77, 102, 140-45, 153, 195) which could not happen if the lease extension did not close. The stated basis for Plaintiff's belief, Astrid Sabellarosa's affidavit in the shareholder action and exhibits thereto (id. ¶¶138-44), does not actually support an inference of false intent.

Plaintiff's fraud-by-omission claim, for failure to disclose that the Debtor lacked authority to negotiate on behalf of Landlord (id. ¶¶147-49), fails for failure to plead a fiduciary relationship and because the stipulation and order stripping him of authority could have been discovered by Plaintiff with reasonable diligence.

Plaintiff also did not plead justifiable reliance given that the Lease provided a second five-year extension option, and included merger and no oral modification clause which serve to prohibit fraud claims.

The promissory estoppel claim also fails, for failure to plead both reasonable reliance (for the same reasons as the fraud claims) and unconscionable injury. For injury to be

unconscionable, it must be <u>beyond</u> that which flows naturally from non-performance of an unenforceable agreement. The injury alleged—lost profits from joint venture dialysis facility operations at the subject premises, and the closure of its business and associated loss of patients—is just non-qualifying expectation damages.

The veil piercing theory also fails, for failure to plead domination and control let alone use of control to commit a fraud or wrong against Plaintiff. Plaintiff alleges Landlord's former owners, the Debtor and Stephen Perlbinder, transferred their respective 50% membership interests to the Trustees in 2012 i.e. no Trustee holds a controlling interest, and Stephen Perlbinder has no interest. Thus, control allegations as to the Trustee are based solely on group pleading. The allegations that the Trustees consented to the Debtor's conduct are also pleaded on information and belief without stating the basis therefor, conclusory and implausible in that his alleged conduct served to strip the Trustees of the value of their shares in the Landlord. The allegations of fraud or wrong—that the Trustees "knew [the Debtor] was negotiating a lease extension or new lease with Plaintiff [and] permitted Perlbinder after January 2023 to negotiate a new lease with Plaintiff"—do not satisfy the relevant standard which is "direct intervention" (*Billy v. Consolidated Mach. Tool Corp.*, 51 N.Y.2d 152, 163 (1980)) in the alleged fraud or wrong, not simply abdicating lease negotiations to another. These allegations are also not entitled to credit because they are conclusory and made on information and belief.

## ARGUMENT

## I.    THE AMENDED COMPLAINT SHOULD BE DISMISSED AS AGAINST THE NONDEBTOR DEFENDANTS

### A.    Legal Standard

To survive a FRCP 12(b)(6) motion, a claim must be "plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is considered facially plausible "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility "is not akin to a probability requirement"; rather, it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

A "document not expressly incorporated by reference in the complaint" that "is nevertheless 'integral' to the complaint" is "a fair object of consideration on a motion to dismiss." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). "A document is integral to the complaint where the complaint relies heavily upon its terms and effect." *Id*.

Where an amended complaint is filed, the initial one is not a "nullity." *Palm Beach Strategic Income, LP v. Salzman*, 2011 WL 1655575, at *5 (E.D.N.Y. May 2, 2011) ("no Second Circuit district court has concluded that … a party's prior pleadings [are] a nullity"; and proceeding to consider initial pleading on motion to dismiss). In general, "a court should typically disregard prior contradictory pleadings, but … 'there may be a rare occasion' to depart from this usual rule." *Id*. (quoting *Barris v. Hamilton*, 1999 WL 311813, at *2 (S.D.N.Y. May 17, 1999)). *See also Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 266 (S.D.N.Y. 2008) (inquiry is one of degree, distinguishing between "directly contradict[ory]" allegations, and allegations that "can be described as clarifying").

**B.     The Amended Complaint Should be Dismissed as Against Landlord**

1.     The Breach of Lease Claim Should be Dismissed

Lease § 78.5.2 permitted Landlord to disregard any lease it "reasonably believes is not reflective of the then current fair market value of comparable office space in the Building" in fixing rent for the first extension period. Plaintiff's first claim is for breach of that provision. More specifically, it asserts Landlord acted unreasonably by excluding below-$100/square foot leases

5

(Amended Complaint ¶¶55-62, 171-79) from the calculation resulting in a manipulated price of $112/square foot.

This claim is time-barred because the $112/square foot price for the first extension period was fixed by the April 11, 2018 Letter and the removal notice admits (ECF #1 ¶1) that this action was commenced September 13, 2024, over six years later.

Plaintiff also waived this claim by acknowledging and representing (Lease Extension ¶8) in February 2023 that Landlord "is not in default of any of the terms, covenants, provisions, warranties, representations and conditions of the Lease through the date hereof."

### 2.     The Fraud Claim Should be Dismissed

The fraud claim fails because the alleged misrepresentations concern future entry into a new lease instrument and are not misrepresentations of present fact. *E.g.*, *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007) (distinguishing "misstatements and omissions of present facts" from "contractual promises regarding prospective performance"); *MFW Associates, LLC v. Plausteiner*, 2017 WL 1057311, at *7 (S.D.N.Y. Mar. 16, 2017) ("the Plausteiners' claim that Purjes misrepresented the terms of a future agreement by definition fails to allege a misstatement of *present* material fact … All of Purjes' alleged statements are forward-looking:  They concern Purjes's anticipation of what the AFA would provide … Such claims do not sound in fraud").

To avoid dismissal, Plaintiff was required to plead that the misrepresentations were made with false intent.  *In re Odonata Ltd.*, 2023 WL 4239535, at *7 (Bankr. S.D.N.Y. June 28, 2023) ("that Baja changed its mind at the last minute about a proposed contract (as Baja was entitled to do as a matter of New York contract law) is not enough to establish liability.  Instead, Odonata was required to prove that Baja did not merely have a change of heart, but that its prior statements about its willingness to negotiate and the acceptability of certain terms were intentionally false at

the time they were made"); *Century Pacific, Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 224-25 (S.D.N.Y. 2007) (citations omitted) ("mere failure to perform a previous promise is alone insufficient, as a matter of law, to raise an inference of an intent to defraud at the time the promise was made"); *Camofi Master LDC v. College P'ship, Inc.*, 452 F. Supp. 2d 462, 476 (S.D.N.Y. 2006) (dismissing fraud defense "because it is not based on a misrepresentation of existing fact … College Partnership has failed to [show] that at the time Duncan entered into the Banking Agreement, it bore no intention to honor the terms").

False intent has not been pleaded. Plaintiff suggests false intent can reasonably be inferred from the portions of Astrid Sabellarosa's affidavit (Sup. Ct. N.Y. Co. Index 655732/2021 NYSCEF #37) filed in support of her motion for preliminary relief in the derivative action against Perlbinder and Exhibits 3, 6 and 7 thereto (Sup. Ct. N.Y. Co. Index 655732/2021 NYSCEF #40, #43, #44) cited in Amended Complaint ¶¶138-44.[4]

But neither her affidavit nor the exhibits support an inference of false intent. To the contrary, an objective reading reflects that the Debtor sought to cut a deal with Plaintiff that would enrich himself personally via broker fees paid, not that he had zero intention of performing at the time he was negotiating with Plaintiff. Indeed, it would make no sense for him to make deliberately false statements about acceptability of terms during the course of negotiation, knowing any deal under discussion would later be scuttled, as the scheme alleged, to enrich himself via broker fees (see Amended Complaint ¶¶7, 16-17, 75-77, 102, 140-45, 153, 195), would only work if a new lease transaction closed.

---

[4] The derivative complaint, together with the referenced affidavit and exhibits thereto are attached to the Chubak Declaration as Exhibits 5-9. For ease of reference, they are hyperlinked herein.

In addition, justifiable reliance is not adequately pleaded. Plaintiff admits that under Lease § 79, it had two extension options the second of which it declined to exercise opting instead to seek to negotiate a long-term modification, presumably to avoid extension period rent being fixed at an unsatisfactory level as occurred in the first extension period. Plaintiff's claim it was "lulled" into not exercising the second extension option (Amended Complaint ¶11) lacks facial plausibility as it was exploring alternate spaces during discussions with the Debtor (id. ¶¶80, 99) in case an agreed extension were not reached. Moreover, justifiable reliance is lacking given that any long-term modification needed to be subscribed in writing under the statute of frauds. *Odonata Ltd. v. Baja 137 LLC*, 206 A.D.3d 567, 569-70 (1st Dep't 2022) ("Even if plaintiff [tenant] had agreed to each of the terms defendant requested during their negotiations, the lease was still subject to defendant's final approval and it required both parties' signatures … It was therefore, unreasonable for plaintiff to have relied …").

Moreover, the Lease included merger (§ 21) and no oral modification (§ 25) clauses[5] that serve to defeat any justifiable reliance claim. *E.g. Int'l Plaza Assoc., L.P. v. Lacher*, 63 A.D.3d 527, 528 (1st Dep't 2009) (citations omitted) ("the terms of the lease, including the no oral modification clause, preclude reasonable reliance on the alleged 'misrepresentations,' which are either at variance with the terms of the lease, or pertain to negotiations for a new lease which never came to fruition"). *See also A.J.D. Bldg. LLC v. Ben–Harush*, 227 A.D.3d 457 (1st Dep't 2024)

---

[5] The merger clause provides "all understandings and agreements heretofore made between the parties hereto are merged in this contract, which alone fully and completely expresses the agreement between Owner and Tenant and any executory agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of it in whole or in part, unless such executory agreement is in writing and signed by the party against whom enforcement of the charge, modification, discharge or abandonment is sought". The no oral modification clause provides "no provision of this lease shall be deemed to have been waived by Owner unless such waiver be in writing and signed by owner".

(citing *Joseph P. Day Realty Corp. v. Lawrence Assoc.*, 270 A.D.2d 140, 141-42 (1st Dep't 2000)) (rejecting reliance claim based on unsigned modification instrument where lease included merger clause).

Insofar as the fraud claim is based on failure to disclose that the Debtor lacked full authority to negotiate on behalf of Landlord, such claims fails because no fiduciary or other special relationship of trust and confidence has been pleaded. Putting aside that "[a] landlord-tenant relationship is not ordinarily a fiduciary one" (*In re Caulfield*, 192 B.R. 808, 818 (Bankr. E.D.N.Y. 1996) (collecting cases)) and that courts have held a "landlord-tenant relationship … is distinctly not a fiduciary relationship, but an arm's length business transaction" (*Ring v. Arts Int'l, Inc.*, 7 Misc.3d 869 (Civ. Ct. N.Y. Co. 2004)), as noted above, Plaintiff pleaded that he did not trust that Debtor would deliver a long-term lease which is why he "began a search for alternate space" in order "to protect itself" (Initial Complaint ¶67), asked its broker "to find alternative space" (Amended Complaint ¶95) and after "getting nervous … sought to pursue" other leases (Initial Complaint ¶86; see also Amended Complaint ¶99 (discussing Plaintiff's search for "alternate leasing opportunit[ies]"). This defeats any claim of omission-based fraud, based on a special relationship of trust and confidence. *900 Unlimited, Inc. v. MCI Telecom. Corp.*, 215 A.D.2d 227, 227 (1st Dep't 1995) ("In the absence of a contractual relationship or a confidential or fiduciary relationship, a party may not recover for fraudulent concealment of fact, since absent such relationship, there is no duty to disclose").

Any fraudulent omission claim based on allegations of superior knowledge on defendants' part concerning the shareholder action or documents filed therein must also fail, as that complaint, which was filed January 2022, over a year before the second lease extension option expired (Amended Complaint ¶98), alleged that the Debtor was "demand[ing] kickbacks as a precondition

to company transactions" concerning Landlord and "will not allow the building's space to be leased" "absent a personal upside" (Chubak Declaration Exhibit 5, Sup. Ct. N.Y. Co. Index 655732/2021 NYSCEF #3, at 7-8) and asserted fiduciary duty, unjust enrichment and conversion claims on that basis. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Red Apple Group, Inc.*, 273 A.D.2d 140, 141 (1st Dep't 2000) ("The IAS court properly rejected this theory that plaintiff can hold defendants liable in fraud for not having disclosed the existence of the eviction proceeding. Absent a confidential or fiduciary relationship, failure to disclose cannot be the basis of a fraud claim … In addition … [t]he existence of the litigation that plaintiff alleges defendants should have disclosed was a matter of public record that plaintiff could have discovered by the exercise of ordinary diligence"); *Alpha GmbH & Co. Schiffsbesitz KG v. BIP Indus. Co.*, 25 A.D.3d 344, 345 (1st Dep't 2006), *lv. dismissed*, 7 N.Y.3d 741 (2006) (fraud claim cannot be predicated on concealment of "matters of public record that … could have [been] discovered by the exercise of ordinary diligence"); *Barrett v. Freifeld*, 77 A.D.3d 600, 602 (2d Dep't 2010) ("With respect to the appellants' alleged failure to disclose … the appellants established their prima facie entitlement to judgment as a matter of law by demonstrating that Freifeld's arrest was a matter of public record which could have been discovered through the exercise of ordinary diligence and, thus, the plaintiffs did not justifiably rely on the appellants to disclose that information").

### 3. The Promissory Estoppel Claim Should be Dismissed

As with the fraud claim, the promissory estoppel claim should be dismissed for failure to adequately plead reasonable reliance. *E.g. Aris Indus. v. 1411 Trizechahn-Swig*, 294 A.D.2d 107, 107 (1st Dep't 2002) (citations omitted) ("Where … a lease contains a clause requiring modification of its terms to be in writing and signed by the landlord … Plaintiff's estoppel claim is without merit, since, under the circumstances alleged, there could have been no reasonable reliance on the alleged oral promise").

Moreover, the Amended Complaint is replete with allegations that any multi-year-lease-modification would be memorialized by a signed writing, consistent with GOL § 5-703.  *E.g.* ¶82 (parties contemplated further extension being memorialized by "formal lease modification agreement"), ¶94 (Plaintiff "follow[ed] up with Perlbinder … to request the formal lease modification agreement"), ¶95 (Plaintiff's broker requested documentation from Perlbinder's and Landlord's counsel), ¶100 (Plaintiff's broker "suggested to Perlbinder and Landlord that they focus on a new long term lease"), ¶105 (one month before lease expiration in February 2023, Perlbinder and Landlord advised Plaintiff "the lease was either going to be extended or a new lease would be signed"), ¶¶106-09 (one-year lease extension entered into on eve of lease expiration is signed by Plaintiff and Landlord, *see also* Lease Extension), ¶130 ("In September 2023, Rose finally advised that Landlord was only willing to enter into a six-month lease extension").)  In *Odonata*, 206 A.D.3d at 569-70, the plaintiff-tenant's having pleaded that execution of a new lease instrument was a constant thread in the parties' discussions served as the basis to affirm dismissal of the promissory estoppel claim there.

The promissory estoppel claim also fails for failure to plead unconscionable injury. At the outset, findings of unconscionable injury should be "limited" and "rare."  *Matter of Hennel*, 29 N.Y.3d 487, 495, 497 (2017).  Such injury is one "beyond that which flows naturally (expectation damages) from the non-performance of the unenforceable agreement."  *Merex A.G. v. Fairchild Weston Sys., Inc.*, 29 F.3d 821, 826 (2d Cir. 1994).  "Thus, in the absence of 'egregious' circumstances, courts have consistently rejected promissory estoppel claims when the alleged injuries consisted of lost profits, lost fees, foregone business opportunities or damage to business reputation."  *Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*, 568 F. Supp. 2d 329, 341 (S.D.N.Y. 2008).  *See also Bulkley v. Shaw*, 289 N.Y. 133, 139 (1942) ("mere refusal to perform

an oral agreement within the Statute, however, is not such fraud as will justify a court in disregarding the statute, even though it result in hardship to the plaintiff"). Here, "plaintiff does not allege any such injury and, in fact, alleges the same damages as for [scuttling] the joint-venture agreement." *Preferred Const., Inc. v. Patriot Organization Inc.*, 64 Misc.3d 1222(A), at *3 (Sup. Ct. Suffolk Co. 2019). The injury alleged—lost profits from joint venture dialysis facility operations at the subject premises, and the closure of its business and associated loss of patients— is precisely the injury flowing naturally from non-performance of an alleged oral preliminary agreement to give a long-term lease to the dialysis facility.

Whether unconscionable injury has been pleaded is properly determined on a motion to dismiss. *Wolet Capital Corp. v. Walmart Inc.*, 2021 WL 242297, at *13 (S.D.N.Y. Jan. 25, 2021) ("It is proper to dismiss the cause of action due to lack of an unconscionable injury on the pleadings alone").

### C.    The Amended Complaint Should be Dismissed as Against the Trustee Defendants and Stephen Perlbinder

The Amended Complaint seeks to hold the Trustees and Stephen Perlbinder liable for all claims under a veil piercing theory. As shown below, Plaintiff failed to adequately plead veil piercing as to any claim against any of them.

#### 1.    Plaintiff Failed to Plead Complete Domination

"[C]omplete domination of the corporation is the key to piercing the corporate veil." *Morris v. New York State Dep't of Taxation and Finance*, 82 N.Y.2d 135, 141 (1993).

While Plaintiff has pleaded (Amended Complaint ¶¶22-33) that the Debtor and Stephen Perlbinder transferred their respective 50% membership interests to the Trustees in 2012, such that the Trustees as a group owned 100% of equity interests, no allegation is made that any one Trustee ever owned a "controlling interest" (*Billy*, 51 N.Y.2d at 163) as required to support a veil piercing

claim; and no allegation is made that Stephen Perlbinder owned any interest in Landlord during the relevant time period.

Instead, Plaintiff relies on impermissible group pleading. *E.g. Atuahuene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct," a complaint fails to satisfy the minimum pleading standard under FRCP 8). *See also In re TransCare Corp.*, 592 B.R. 272, 288 (Bankr. S.D.N.Y. 2018) (collecting cases).

Such lumping is particularly inappropriate given that veil piercing is sought as to a fraud claim as to which a heightened pleading standard applies under FRCP 9(b). Federal courts recognize a "group pleading doctrine [which] is an exception to the requirement that the fraudulent acts of each defendant be identified separately in the complaint" under certain circumstances. *Elliot Assoc., L.P. v. Hayes*, 141 F. Supp. 2d 344, 354 (S.D.N.Y. 2000), *aff'd*, 26 F. App'x 83 (2d Cir. 2002). "The group pleading doctrine is extremely limited in scope and only applies to group-published documents". *TransCare*, 592 B.R. at 288. *See also DeAngelis v. Corzine*, 17 F. Supp. 3d 270, 281 (S.D.N.Y. 2014) (complaint must allege facts showing the defendant was "a corporate insider with direct involvement in day-to-day affairs, within the entity issuing the statement"). Here, the doctrine has no application as the alleged misrepresentations are not asserted to be group-published, and the Trustees are not alleged to be corporate insiders with direct involvement in day-to-day affairs.

Even if ownership were grouped, Plaintiff fails to allege any of the Trustees exercised domination or control. Instead, the Amended Complaint alleges that the Debtor had "exercised de facto control over Landlord for four decades" (id. ¶24), enough to engage in a litany of transactions that only benefited him (id. ¶¶158-61). And (id. ¶147) in January 2023, Rose Associates "was

given exclusive authority to manage and lease space in the Building", which Plaintiff was apprised of six months later.

       2.    <u>Plaintiff Failed to Plead Commission of a Fraud or Wrong Against Plaintiff</u>

"[D]omination, standing alone, is not enough" to state a veil piercing claim … some showing of a wrongful or unjust act toward plaintiff is required … The party seeking to pierce the corporate veil must establish that the owners, through their domination, abused … the corporate form to perpetrate a wrong or injustice <u>against that party</u>". *Morris*, 82 N.Y.2d at 141-42 (emphasis added). *See also id*. at 141 (veil piercing requires "that: (1) the owners exercised complete domination of the corporation <u>in respect to the transaction attacked</u>; and (2) that such domination was used <u>to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury</u>") (emphasis added).

The sole allegations made as to the Trustees are that "[u]pon information and belief, at all times herein mentioned" they "were aware of, acquiesced in, fostered, aided and abetted, permitted and consented to" (1) "the acts and omissions [of Debtor ] set forth in Paragraphs 157-63"[6], (2) "Perlbinder's domination and control over Landlord", and also benefited from said control and (3) "Perlbinder … negotiating a lease extension or new lease with Plaintiff for Landlord and his

---

[6] Those allegations are that he "used Landlord as his personal piggy bank and used corporate funds for his own personal benefit." (Amended Complaint ¶157.) Specifically, "at Perlbinder's direction, Landlord made millions of dollars of dividend payments, $23 million in 'loans' and millions in payments for Perlbinder's personal expenses, without documentation, and Perlbinder used $125,000.00 of Landlord's funds to purge his personal contempt of court" (id. ¶158); "Landlord, at Perlbinder's direction, leased a $115,000.00 Porsche solely for Perlbinder's personal use and paid for same" (id. ¶159); "Perlbinder has used Landlord's funds to renovate his Hamptons beach house and two apartments, and to pay the salaries of his ex-wife's driver, his personal chef and house staff" (id. ¶160); and "Landlord, at Perlbinder's direction, made hundreds of intercompany transfers and commingled family resources and assets" (id. ¶161).

acts and omissions set forth hereinabove".  ([Id.](#) ¶¶164-67.)  No allegations are made as to Stephen Perlbinder.

These allegations are insufficient to state a claim for failure to plead direct intervention on the part of the Trustees or Stephen Perlbinder in the management of the Landlord.  "The burden is on the plaintiff to allege specific facts demonstrating 'direct intervention' in management of the subsidiary and completely ignoring the 'subsidiary's paraphernalia of incorporation, directors and officers'".  Piercing the Corp. Veil § 2:35, "New York—New York courts' interpretations after the great trilogy" (citations omitted).  *See also Billy*, 51 N.Y.2d at 163 ("[a]t the very least, there must be direct intervention by the parent in the management of the subsidiary to such an extent that 'the subsidiary's paraphernalia of incorporation, directors and officers are completely ignored"); N.Y. Pattern Jury Instr.—Civil 2:266, "Liability for the Conduct of Another—Piercing the Corporate Veil" (citations omitted) (same, replacing "parent" with "owners").  We are unaware of any authority premising a veil piercing claim upon allegations of abdication of control.

In addition, the allegations that the Trustees "fostered, aided and abetted", "consented to" and "benefitted from" the Debtor's conduct/control are implausible as they are conclusory and devoid of factual support.  In practical terms, no allegations are made beyond acquiescence, which aside from not being a qualifying fraud or wrong (as noted above) is belied by the commencement of the shareholder action.  The allegations that they fostered, aided and abetted, consented to and benefitted from the foregoing are also implausible in that the Debtor is alleged to have stripped Landlord of its value for his personal benefit (Footnote 6, *supra*), to the detriment of the Trustees as owners.  No explanation is provided as to how or why they would consent to that let alone aid and abet that.

Said allegations are also not entitled to credit because they are made on information and belief without articulating the basis for Plaintiff's belief that the Trustees consented to, aided and abetted etc. the Debtor's conduct. *Evergreen E. Coop v. Whole Foods Mkt., Inc.*, 2023 WL 545075, at \*2 (2d Cir. Jan. 27, 2023) (quoting *Citizens United v. Schneiderman*, 882 F.3d 374, 384-85 (2d Cir. 2018)) ("A plaintiff may satisfy the plausibility standard by pleading facts upon information and belief, but a plaintiff 'cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory. Those magic words will only make otherwise unsupported claims plausible when 'the facts are peculiarly within the possession and control of defendant or where the belief is based on factual information that makes the inference of culpability plausible.'"); *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (plaintiff is not prevented from pleading "facts alleged upon information where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible"; rather, the plausibility standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegality") (internal quotation marks and citations omitted).

## II. ALTERNATIVELY, THIS COURT SHOULD ABSTAIN FROM HEARING THIS ACTION

### A. Abstention is Mandatory under 28 U.S.C. § 1334(c)(2)

Under 28 U.S.C. § 1334(c)(2), abstention is required if "(1) the motion was timely; (2) the action is based on a state law claim; (3) the action is 'related to' but not 'arising in' a bankruptcy case or 'arising under' the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; and (6) that action can be 'timely adjudicated' in state court." *Lead I JV, LP v. N. Fork Bank*, 401 B.R. 571, 579 (E.D.N.Y. 2009). *See also Panthers Cp., LLC v. Jar 259 Food Corp.*, 2023 WL 4823942, at \*2 (E.D.N.Y. Mar. 6,

2023) ("In other words, if this court finds that the instant case is merely related to bankruptcy, *i.e.* is a non-core proceeding, and there is no other source of jurisdiction, then the doctrine of mandatory abstention requires that the court remand the case to state court, so long as the proceeding can be 'timely adjudicated' in a state forum").

"The party opposing mandatory abstention bears the burden of showing that such abstention is not warranted." *In re Ebury St. Cap., LLC*, 664 B.R. 639, 648 (Bankr. S.D.N.Y. 2024).

Here, the relevant factors all weigh in favor of abstention. This motion is timely, as it is being made pre-answer before any motion to dismiss was determined. The Amended Complaint makes only state law claims. The claims against the Debtor would have no "conceivable effect on the bankruptcy estate" (*SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 340 (2d Cir. 2018)), because all of the Debtor's property is already estate property under 11 U.S.C. § 541. The claims against the nondebtor defendants would not even have a conceivable effect on the estate, and none of them have filed proofs of claim. Diversity is lacking (Amended Complaint ¶¶19-21) and no Federal question is presented. There is no reason why this action cannot be timely adjudicated in state court. Indeed, prior to removal argument on the defendants' motions to dismiss was scheduled (Chubak Declaration Exhibit 10) for December 11, 2025.

### B. Alternatively, this Court Should Abstain under 28 U.S.C. § 1334(c)(1) or Equitably Remand under 28 U.S.C. § 1452(b)

28 U.S.C. § 1334(c)(1) provides that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." When evaluating a permissive abstention motion courts consider the following factors:

> (1) the effect or lack thereof on the efficient administration of the [bankruptcy] estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the] court's docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*Osuji v. HSBC Bank, U.S.A. N.A.*, 580 B.R. 605, 612 (E.D.N.Y. 2018). "The court is not required, however, to consider each of the factors, and may permissibly abstain where only some of them favor abstention." *Id.*

Additionally, a court may remand a removed claim "on any equitable ground", pursuant to 28 U.S.C. § 1452(b). The equitable remand factors are substantially similar to the permissive abstention factors, and courts often analyze them together. *Ebury*, 664 B.R. at 649, 654; *In re Exeter Holding, Ltd.*, 2013 WL 1084548, at *7 (Bankr. E.D.N.Y. Mar. 14, 2013).

Here, the relevant factors weigh in favor of permissive abstention and/or equitable remand. This action does not present any bankruptcy issues, let alone core bankruptcy claims. Rather, it only asserts state law claims, that could not have otherwise been brought in Federal court on account of the absence of a Federal question and absence of diversity. None of the nondebtor defendants have filed proofs of claim. This action will not affect estate administration. Further, if the nondebtor defendants were required to answer, they would indicate that they do not consent to this Court's entry of final orders or judgments.

As the relevant permissive abstention factors weigh in favor of such relief, and "none of the remaining permissive abstention factors weigh heavily against abstention", permissive

abstention and/or equitable remand are appropriate. *Kahlon v. Yitzhak*, 2025 WL 1566469, at *8 (E.D.N.Y. June 3, 2025).

## <u>CONCLUSION</u>

The Amended Complaint should be dismissed; or alternatively, this Court should abstain from hearing this action or equitably remand same.

Dated: New York, NY
November 5, 2025

Amini LLC

/s/ Jeffrey Chubak
Jeffrey Chubak
131 West 35th Street
12th Floor
New York, NY 10001
(212) 490-4700
jchubak@aminillc.com
Attorneys for the Nondebtor Defendants