## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>BARTON MARK PERLBINDER,<br><br>             Debtor. | Case No. 25-bk-73317-AST<br><br>Chapter 11 |
| REPLACEMENT ASSOCIATES, LLC,<br><br>             Plaintiff,<br><br>      -against-<br><br>210 EAST 86TH STREET CORP., BARTON MARK PERLBINDER, MUFFY FLOURET as Trustee of the MUFFY FLOURET 2013 FAMILY TRUST and as Trustee of the MARK PERLBINDER 2023 IRREVOCABLE TRUST, STEPHEN PERLBINDER, ASTRID SABELLAROSA as Trustee of the ARTICLE 4 TRUST UNDER ASR 2020 FAMILY TRUST and as Trustee of the STEPHEN PERLBINDER 2016 FAMILY TRUST F/B/O ASTRID SABELLAROSA, ANDREA JO STEIN, as Trustee of the ARTICLE 4 TRUST UNDER AJS 2020 FAMILY TRUST and as Trustee of the STEPHEN PERLBINDER 2016 TRUST F/B/O ANDREA JO STEIN,<br><br>             Defendants | Adv. Pro. No. 25-ap-08094-AST |

---

## MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS OF THE NON-DEBTOR DEFENDANTS

---

**SILLS CUMMIS & GROSS P.C.**
101 Park Avenue, 28th Floor
New York, New York 10178
(212) 643-7000
*Attorneys for Plaintiff*
*Replacement Associates, LLC*

# Table of Contents

Page

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ..........................................................................................6

LEGAL ARGUMENT..................................................................................................7

I.     MOVING DEFENDANTS' MOTION TO DISMISS SHOULD BE
DENIED...........................................................................................................7

     A.    Legal Standard on a Motion to Dismiss......................................7

     B.    The Amended Complaint States a Claim For Fraud....................8

     C.    The Amended Complaint States a Claim For Promissory Estoppel .........14

     D.    The Amended Complaint States a Claim For Breach of Contract.............16

     E.    Landlord's Corporate Veil Can Be Pierced ...............................17

II.    THE COURT SHOULD NOT ABSTAIN FROM HEARING THIS
ACTION .......................................................................................................21

     A.    There is No Basis for Mandatory Abstention ...........................21

         i.    Tenant's Fraud Claims Against Landlord and Debtor
Constitute a "Core" Proceeding ....................................22

         ii.   Moving Defendants Have Consented to This Court's
Jurisdiction ...................................................................23

     B.    The Court Cannot Abstain or Remand this Action....................24

         i.    Permissive Abstention is Not Appropriate ...................24

         ii.   The Court Should Not Remand the Action...................25

CONCLUSION...........................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

A.J.D. Bldg. LLC v. Ben-Harush,
    227 A.D.3d 457 (1st Dep't 2024) ............................................................................11

Albion Alliance Mezzanine Fund, L.P. v. State St. Bank & Trust Co.,
    8 Misc. 3d 264 (Sup. Ct. N.Y. Co. 2003) .............................................................13

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ...............................................................................................7

Barrett v. Freifeld,
    64 A.D.3d 736 (2d Dep't 2009) .............................................................................13

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007) ...............................................................................................7

Buckley v. Shaw,
    289 N.Y. 133 (1942) .............................................................................................16

Buddman Distr., Inc. v. Labatt Importers, Inc.,
    91 A.D.2d 838 (4th Dep't 1982) ...........................................................................16

Castellotti v. Free,
    138 A.D.3d 198 (1st Dep't 2016) ...................................................................15, 16

Channel Master Corp. v. Aluminum Ltd. Sales, Inc.,
    4 N.Y.2d 403 (1958) ......................................................................................10, 11

Christie's Inc. v. SWCA, Inc.,
    22 Misc. 3d 380 (Sup. Ct. N.Y. Co. 2008) ..........................................................17

Cortland St. Recovery Corp. v. Hellas Telecom, S.A.R.L.,
    47 Misc. 3d 544 (Sup. Ct. N.Y. Co. 2014) ..........................................................21

Cortlandt St. Recovery Corp. v Bonderman,
    31 N.Y.3d 30 (2018) .............................................................................................18

Danann Realty Corp. v. Harris,
    5 N.Y.2d 317 (1959) .............................................................................................11

Darby Trading, Inc. v. Shell International Trading & Shipping Co.,
    568 F. Supp. 2d 329 (S.D.N.Y. 2008) ..................................................................16

Deerfield Comms. Corp. v. Chesebrough-Ponds, Inc.,
68 N.Y.2d 954 (1986) ...................................................................................11

In re Dreier,
438 B.R. 449 (Bankr. S.D.N.Y. 2010) .........................................................22

Elliot Assoc., L.P. v. Hayes,
141 F. Supp. 2d 344 (S.D.N.Y. 2000).........................................................21

Etage Real Estate LLC v. Stern,
211 A.D.3d 632 (1st Dep't 2022) .................................................................18

Forum Ins. Co. v. Texarkoma Transp. Co.,
229 A.D.2d 341 (1st Dep't 1996) .................................................................18

Granfinanciera, S.A. v. Nordberg,
492 U.S. 33 (1989)........................................................................................24

Graubard Mollen Dannett & Horowitz v. Moskovitz,
86 N.Y.2d 112 (1995)...................................................................................11

In re Hennel,
29 N.Y.3d 487 (2017) ..................................................................................15

Hermitage Ins. Co. v. Zaidman,
107 A.D.3d 579 (1st Dep't 2013) .................................................................16

Int'l Plaza Assoc., L.P. v. Lacher,
63 A.D.3d 527 (1st Dep't 2009) ...................................................................11

International Credit Brokerage Co., Inc. v. Agapov,
249 A.D.2d 77 (1st Dep't 1998) ...................................................................18

Khan v. Associated Deliveries, Inc.,
2007 U.S. Dist. LEXIS 60191 (E.D.N.Y. 2007)..........................................10

Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.),
304 F.3d 223 (2d Cir. 2002)..........................................................................23

In re Mercury Masonry Corp.,
114 B.R. 35 (Bankr. S.D.N.Y. 1990) ...........................................................24

Moklechur v. Garland,
2025 U.S. Distr. LEXIS 133567 (E.D.N.Y. July 14, 2025)............................7

N.Y. City Emps. Ret. Sys. v. Bernard J. Ebbers, et al. (In re WorldCom, Inc. Sec.
Litig.,
293 B.R. 308 (S.D.N.Y. 2003)......................................................................22

Nat. Union Fire Ins. Co. of Pittsburgh, P.A. v. Red Apple Group, Inc.,
    273 A.D.2d 140 (1st Dep't 2000) ........................................................13

In re Odonata Ltd.,
    2023 WL 4239535 (Bankr. S.D.N.Y. 2023) ...............................5, 8, 9, 10

Odonata, Ltd. v. Baja 137 LLC,
    206 A.D.3d 567 (1st Dep't 2022) .......................................................12

Olivieri Constr. Corp. v. WN Weaver St., LLC,
    144 A.D.3d 765 (2d Dep't 2016) .......................................................18

Osuji v. HSBC Bank, U.S.A., Nat'l Ass'n,
    580 B.R. 605 (E.D.N.Y. 2018) ..........................................................25

Phillips v. City of Middletown,
    2018 U.S. Dist. LEXIS 163308 (S.D.N.Y. Sept. 24 2021)...................17

Preferred Const., Inc. v. Patriot Org. Inc.,
    64 Misc. 3d 1222(A) (Sup. Ct. Suffolk Co. 2019)..............................16

In re Refco, Inc. Sec. Litig.,
    2008 WL 1827644 (S.D.N.Y. Apr.21, 2008).......................................22

Sabo v. Delman,
    3 N.Y.2d 155 (1957) .....................................................................8, 10

Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC,
    2021 Bankr. LEXIS 2958 (Bankr. S.D.N.Y. 2021) .............................20

In re Texaco Inc.,
    77 B.R. 433 (Bankr. S.D.N.Y. 1987)..................................................22

Tho Dinh Tran v. Alphonse Hotel Corp.,
    281 F.3d 23 (2d Cir. 2002)................................................................17

In re Tronox,
    603 B.R. 712 (Bankr. S.D.N.Y. 2019)................................................23

Vladeck, Waldman, Elias & Engelhard, P.C. v. Paramount Leasehold, L.P.,
    46 Misc. 3d 1225(A) (Sup. Ct. N.Y. Co. 2015)..................................13

Wexner v. First Manhattan Co.,
    902 F.2d 169 (2d Cir. 1990)..............................................................21

Wilsen Assocs. Real Estate Corp. Inc. v. Pizilly,
    204 A.D.2d 777 (3d Dep't 1994) .........................................................8

Winstead v. Uniondale Union Free Sch. Dist.,
    170 A.D.2d 500 (2d Dep't 1991) ............................................................16

Wolet Capital Corp. v. Walmart Inc.,
    2021 U.S. Dist. LEXIS 13406 (S.D.N.Y. Jan. 25, 2021) ..........................16

In re WP Realty Acquisition III LLC,
    626 B.R. 154 (Bankr. S.D.N.Y. 2021) ................................................22, 23

Zuckerman v. City of New York,
    49 N.Y.2d 557 (1980) .............................................................................10

**Statutes**

28 U.S.C. § 157(b)(1) ...................................................................................23

28 U.S.C. § 157(b)(2) ...................................................................................23

28 U.S.C. § 157(b)(2)(A), (B), (L), (O) .......................................................23

28 U.S.C. § 157(b)(3) ...................................................................................23

28 U.S.C. 1334(c)(1) ....................................................................................24

28 U.S.C. 1334(c)(2) .........................................................................21, 22, 23

28 U.S.C. 1452 ..............................................................................................25

Federal Rule of Bankruptcy Procedure 7012 ..................................................7

Federal Rule of Civil Procedure 12(b)(6) ........................................................7

Federal Rules of Civil Procedure Rule 9(b) ..................................................20

General Obligations Law § 15-301 ................................................................10

Plaintiff, Replacement Associates, LLC ("Plaintiff" or "Tenant") submits this Memorandum of Law in opposition to the motion to dismiss of the non-debtor defendants, 210 East 86th Street Corp. ("Landlord") and the shareholder-defendants (other than the debtor, Barton Mark Perlbinder) (collectively, the "Shareholders", and together with Landlord, the "Moving Defendants").

## PRELIMINARY STATEMENT

Contrary to Moving Defendants' mis-characterization, this removed action is not about a tenant trying to enforce an unenforceable lease agreement or to recover a mere rent overcharge. Rather, it centers around the false and fraudulent conduct, misrepresentations, omissions, and promises of Landlord and Barton Mark Perlbinder ("Debtor"), which resulted in Tenant's forced closure of its long-running business and loss of a multi-million dollar joint venture partnership with the world's preeminent dialysis facility operator, for which the Shareholders are also liable under corporate veil piercing principles based on, among other things, their own (and the Debtor's) emails and judicial admissions in state court actions.

For almost twenty years, Tenant operated a dialysis facility on the third and fifth floors at 210 East 86th Street in Manhattan (the "Premises"). Moving Defendants admitted in public filings that Tenant was the "anchor tenant" whose tenancy was "vital" to the building and Landlord's cash flow, and that the building would be 80% vacant and unsustainable if Tenant were to vacate.[1] They also admitted that the Debtor exercised complete de facto control over Landlord with the Shareholders' knowledge and implied or explicit consent, that the Debtor routinely overcharged

---

[1] See Stephen Perlbinder et al v. Barton Mark Perlbinder, Supreme Court, New York Co., Index No. 655732/21 ("Shareholder Action"), at NYSCEF No. 37, ¶¶46, 56, a copy of which is annexed as Ex. 6 to the moving Declaration of Jeffrey Chubak ("Chubak Decl.").

tenants for rent, and that all defendants disregarded Landlord's corporate form, commingled funds, and otherwise abused the privilege of doing business in the corporate form.[2]

Consistent with his practices, the Amended Complaint alleges that the Debtor caused Landlord to overcharge Tenant's rent each month, which threatened to put it out of business. Tenant therefore entered into discussions with the Debtor—who for twenty years held himself out as Landlord's sole and exclusive representative authorized to bind Landlord—for a rent reduction and lease modification and extension agreement.

Beginning in 2020 and continuing to the Summer of 2023, the Debtor repeatedly promised and represented to Tenant, among other things, that (i) Landlord would extend Tenant's lease for five years at a reduced rent of $108 per square foot if Tenant agreed to pay all brokerage commissions (Tenant agreed to do so); (ii) Tenant's lease would be extended; (iii) the lease extension/rent reduction documentation had been drafted and would be forthcoming; and (iv) Tenant did not need to—and should not—relocate to other space. Tenant relied on these and other promises and representations, was lulled into letting its lease extension option lapse, and stopped looking for alternate space.

With just one week before Tenant's lease expired in 2023, and aware of Tenant's proposed joint venture requiring a long-term lease, the Debtor dropped a bombshell—Landlord would only consider a one-year extension despite its prior promises and representations for a five-year extension. Tenant had no choice but to agree, under duress, because its dialysis facility was legally obligated to remain open under New York City Department of Health ("DOH") regulations.

---

[2] Id., ¶¶ 16-18, 25, 26, 76, 84; see also Verified Petition filed in Barton Mark Perlbinder et al v. Stephen Perlbinder, et al., Supreme Court, New York Co., Index No. 155612/2024 ("Dissolution Proceeding"), at NYSCEF No. 1, a copy of which is annexed as Ex. C to the accompanying Declaration of S. Jason Teele, Esq., dated November 19, 2025 ("Teele Decl."), ¶¶ 11, 12, 14, 15, 33-45, 382-387. Based upon these admissions, Landlord's corporate veil can be pierced and the Shareholders held personally liable.

The Debtor and Tenant thereafter engaged in further discussions for a new long-term lease. The Debtor (on Landlord's behalf) promised and represented that it would enter into a new long-term lease if Tenant fired its broker and hired Landlord's broker (CBRE). Desperate to save its business and the joint venture, Tenant complied. Landlord's "broker" (CBRE) then ghost-drafted a proposal for Tenant's "broker" (CBRE), which CBRE said the Debtor had approved.

Despite this, Landlord only offered Tenant a six-month lease extension right before its lease expired in the Summer of 2024, which forced Tenant to close its dialysis facility, relocate its patients to other facilities, and caused Tenant to lose its business and multi-million dollar joint venture.

At the same time Landlord and the Debtor were making these false representations, the Debtor and the Moving Defendants hid from Tenant the fact that the Debtor was involved in intra-family litigation and being sued for breach of fiduciary duty and conversion. They also hid from Tenant that a receivership application had been filed in October 2022 to wrest control of the building from the Debtor and that, in January 2023, the Debtor was stripped of all authority to negotiate with Tenant, and Rose Associates ("Rose") was appointed the building's "managing agent." At all relevant times, however, the Debtor continued to deal with Tenant as Landlord's sole and exclusive authorized principal, and continued to lie and knowingly make misrepresentations of existing facts that he knew were false and/or future intentions that neither he nor Landlord ever intended to keep.

The Shareholders attempt to minimize (if not ignore) their own emails obtained from the Shareholder Action, which show that they agreed with the Debtor more than a year earlier (in February 2022) to Tenant's five year lease extension, and that the Debtor refused to permit the deal to move forward unless he was paid millions of dollars in "illegal" broker commissions

(Shareholders' term) from the transaction—something the Shareholders would <u>never</u> agree to. These emails also clearly show that, contrary to Landlord's and the Debtor's promises and representations, the lease extension/rent reduction documentation had never been drafted, and Landlord had no intention of entering into a lease extension or a new long-term lease absent Debtor's receipt of the "illegal" brokerage commissions. When Tenant discovered the true facts, it was too late to locate alternate space, avoid closure of its dialysis facility, or move forward with its joint venture. Debtor's and Landlord's bait and switch caused Tenant to sustain millions of dollars in damages.

The Amended Complaint's well-pled allegations—which are presumed true on this motion—show that Landlord and the Debtor repeatedly lied, misrepresented and otherwise deceived Tenant; that their lies, misrepresentations and deceitful acts and omissions were material; and that Tenant sustained significant damages as a result thereof.

Moving Defendants' boilerplate objections lack merit. The Amended Complaint pleads misrepresentations of present fact to support the fraud claim, <u>i.e.</u>, that Landlord would extend the lease at the reduced rental if Tenant agreed to pay all broker commissions; that the lease extension documentation had been drafted and would be forthcoming; that Tenant need not look for and Landlord actively discouraged Tenant to relocate to alternate space; that Landlord would enter into a long term lease transaction if Tenant fired its broker and hired Landlord's broker (CBRE); and that the Debtor (Landlord) had agreed to its own broker's proposal. A fraud claim has been pled.

Assuming, <u>arguendo</u>, some of these representations concerned future conduct, they are still actionable in fraud because of Landlord's and Debtor's false intent—they knew that they would not be performed and had no present intention to perform them. At the pleading stage, where Tenant's allegations are deemed to be true, no discovery has been taken, and all of these (and

other) facts are exclusively in defendants' possession, the Amended Complaint adequately pleads actionable misrepresentations to sustain the fraud claim.

Indeed, even the case Moving Defendants primarily rely upon—In re Odonata Ltd., 2023 WL 4239535 (Bankr. S.D.N.Y. 2023)—shows that a fraud claim has been pled. Prior to removal to bankruptcy court, the state court in Odonata denied the landlord's motion to dismiss and sustained the tenant's fraud claim based on the contention--like here--that the landlord fraudulently induced it to remain at the premises and to delay other leasing opportunities. Moving Defendants' papers also conspicuously omit the fact that in In re Odonata Ltd., the bankruptcy court permitted full discovery and held a trial on the tenant's fraud claim. This Court should likewise do the same.

Tenant's justifiable reliance is also adequately pled. Contrary to Moving Defendants' argument, Tenant is not relying on emails to create a binding agreement of lease. Rather, the Amended Complaint alleges that in reliance on Landlord's and the Debtor's fraudulent acts and omissions, Tenant (i) agreed to pay all broker commissions; (ii) failed to exercise its second lease extension option; (iii) abandoned its efforts to relocate to alternate space; (iv) fired its broker and hired Landlord's broker; (v) waited for Landlord to send the lease extension documentation until its lease was about to expire; and (vi) was forced to close its business, relocate its patients and lose a lucrative joint venture deal. Had Tenant known the true facts, it could have exercised its lease extension option, and would have had enough time to search for and obtain alternate space and DOH approval for a new dialysis facility.

Likewise, the Amended Complaint pleads a claim for promissory estoppel. Moving Defendants admit that Tenant pleads a clear and unambiguous promise. They argue, however, that Tenant failed to plead justifiable reliance and unconscionable injury. As noted above, justifiable reliance is adequately pled. Tenant undeniably suffered an unconscionable injury—it was forced

to close its 20-year old dialysis facility and relocate its patients to other facilities, and lost a multi-million-dollar joint venture of which Landlord and the Debtor were well aware.

Nor should the breach of contract claim be dismissed. Moving Defendants' motion to dismiss based upon the six-year statute of limitations is misplaced. Because Landlord improperly overcharged Tenant rent each month, and the lease's rent provision is considered a divisible contract, the Statute of Limitations is inapplicable. Nor is there any basis to find that the claim has been waived.

Lastly, the Shareholders argue that Landlord's corporate veil cannot be pierced. However, the Amended Complaint's detailed factual allegations, based on the Shareholders' own affidavits and documentary evidence in the Shareholder Action and Dissolution Proceeding, show defendants' complete disregard of corporate formalities, commingling and personal use of corporate funds, and the Debtor's de facto control of Landlord with their knowledge and consent.

Moving Defendants' motion, which misconstrues and distorts the Amended Complaint's well pleaded and detailed allegations, should be denied in its entirety, and this case, which was commenced over one year ago in state court, should be permitted to proceed on all claims.

## STATEMENT OF FACTS

The relevant facts for the purposes of this motion only are set forth in the Amended Complaint, a copy of which is annexed as Ex. A to the Teele Decl., and in the exhibits annexed to the Teele Decl., all of which are incorporated by reference herein.

## LEGAL ARGUMENT

## I.  MOVING DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED

### A.  Legal Standard on a Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012, states that a cause of action must be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

As the Court in Moklechur v. Garland, 2025 U.S. Distr. LEXIS 133567, *8-9 (E.D.N.Y. July 14, 2025) recently stated:

> "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [Ashcroft v. Iqbal] (citing Twombly, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). In evaluating a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff. Rothstein v. UBS AG, 708 F.3d 82, 94 (2d Cir. 2013). When considering a Rule 12(b)(6) motion, the court must "test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." Glob. Network Communs., Inc. v. City of N.Y., 458 F.3d 150, 155 (2d Cir. 2006).

Here, the Amended Complaint passes the plausibility standard, and sufficiently states facts for the fraud, promissory estoppel and breach of contract claims and to pierce the corporate veil to hold the Shareholders personally liable.

**B.      The Amended Complaint States a Claim For Fraud**

In the case of <u>In re Odonata</u>, <u>supra</u>, the bankruptcy court for the Southern District of New York relied upon New York case law and stated that "if a statement of intention was 'actually made with a preconceived and undisclosed intention of not performing it,' that false statement may be treated as a misrepresentation of a material existing fact." <u>Id.</u> citing <u>Sabo v. Delman</u>, 3 N.Y.2d 155 (1957). "A fraud claim that is premised on alleged false statements of intention will only succeed upon proof that the defendant made statements of intent that it knew would not be performed or with a present intention not to perform, and did so for the purpose of misleading the plaintiff." <u>Id.</u> citing <u>Wilsen Assocs. Real Estate Corp. Inc. v. Pizilly</u>, 204 A.D.2d 777, 778 (3d Dep't 1994).

Contrary to Moving Defendants' argument, the Amended Complaint does not merely assert that Landlord and the Debtor had no intent to perform, or that Landlord simply "changed its mind." Rather, the Amended Complaint alleges that Landlord and the Debtor made numerous misrepresentations and omissions of fact, including but not limited to, that Landlord would agree to the lease extension at the reduced rental if Tenant paid all leasing commissions; that the lease extension/rent reduction documentation had been drafted and would be forthcoming; that Tenant need not relocate; that Landlord actively discouraged Tenant to search for alternate space; that Landlord agreed to enter into a long term lease if Tenant fired its broker and hired Landlord's broker; that the Debtor (Landlord) had agreed to Landlord's broker's proposal for a long term lease; and that at all times since 2005 the Debtor was Landlord's sole and exclusive decision-maker and was authorized to negotiate for and bind Landlord. <u>See</u> Amended Complaint, ¶¶ 75, 79, 81, 92, 97, 119-122, 139-153.

The Amended Complaint further alleges, or the Court can infer from its allegations, that Landlord and the Debtor knew at the time these representations were made that they would not be

performed and/or they never intended to perform them.  Id., ¶¶ 139-153.  At the pleading stage, where no discovery has been taken and these facts are exclusively in defendants' possession, the Amended Complaint adequately pleads the misrepresentation element of a fraud claim.

Even Moving Defendants' main case supports the denial of their motion.  In Odonata, supra, the tenant's fraud claim—based on the contention that the landlord fraudulently induced it to remain at the premises and to delay other leasing opportunities—survived the landlord's pre-answer motion to dismiss in the original state court action (prior to removal to the bankruptcy court).  See In re Odonata, 2023 WL 4239535 *4 ("the state court dismissed all of the contract based claims, leaving only the claims for damages based on the alleged fraud and fraudulent inducement.");  Odonata, Ltd. v. Baja 137 LLC, Sup. Ct. N.Y. Co. Index No. 654257/2021, Decision + Order on Motion, Feb. 4, 2022 (NYSCEF No. 78; Teele Decl., Ex. B).

The bankruptcy court's decision was rendered after a trial and after the parties had engaged in full and contentious discovery.  Id. 2023 WL 4239535 *1.  Ultimately, the tenant's evidence at trial was insufficient to sustain the claim.

Here, this case is at the pleading stage.  Like the tenant in Odonata, Tenant has stated a fraud claim in connection with Landlord's and the Debtor's misrepresentations and omissions concerning the lease extension/new lease and Tenant's foregoing of other leasing opportunities at Landlord's and the Debtor's behest.  The Amended Complaint's detailed allegations, and the Shareholders' sworn-to allegations and emails in the Shareholder Action, evidence Landlord's and

the Debtor's fraudulent acts and omissions.[3] See Chubak Decl., Exs. 6-9; Teele Decl., Ex. D. Like

the tenant in In re Odonata Ltd., Tenant is also entitled to full discovery and a trial.

Moving Defendants next assert that justifiable reliance has not been pled because the lease

contains "merger" and "no-oral modification" provisions, and because Tenant "declined to

exercise" its second extension option, "opting instead to seek to negotiate a long-term

modification." However, the New York Court of Appeals has squarely held that "merger" and "no

oral modification" provisions are no bar to a fraud claim. In Sabo v. Delman, supra, the New York

Court of Appeals held that a "merger" clause:

> may not be invoked to keep out such proof [of fraudulent
> representations.] Indeed, if it were otherwise, a defendant would
> have in its power to perpetuate a fraud with impunity, depriving the
> victim of all redress, if he simply had the foresight to include a
> merger clause in the agreement. Such is not the law [citations
> omitted.]

3 N.Y.2d at 161.

Moving Defendants' argument concerning the lease's "no-oral modification" clause—a

Statute of Frauds based defense under General Obligations Law § 15-301—was addressed by the

Court of Appeals in Channel Master Corp. v. Aluminum Ltd. Sales, Inc., 4 N.Y.2d 403 (1958):

> The present action is in tort, not contract, depending not upon the
> agreement between the parties, but rather upon deliberate
> misrepresentation of fact, relied on by the plaintiff to his detriment.
> In other words, the "legal relations" binding the parties are created
> by the utterance of a falsehood "with a fraudulent intent" and by
> reliance thereon. . . and the cause of action is entirely "independent
> of contractual relations between the parties." [citations omitted]. . .
> If the proof of a promise or contract, void under the statute of frauds,
> is essential to maintain the action, there may be no recovery, but, on
> the other hand, one who fraudulently misrepresents himself as

---

3 Arguments by counsel, which attempt to explain away the admissions and evidence contained in the
affidavits and emails in the Shareholder Action, have no probative value and cannot be considered on this
motion to dismiss. Khan v. Associated Deliveries, Inc., 2007 U.S. Dist. LEXIS 60191 (E.D.N.Y. 2007);
Zuckerman v. City of New York, 49 N.Y.2d 557, 560 (1980).

> intending to perform an agreement is subject to liability *in tort whether the agreement is enforceable or not.* [cleaned up; emphasis added]

4 N.Y.2d at 408.[4]

Tenant's fraud claim is premised on Landlord's and the Debtor's fraudulent acts and omissions, not the lease. The lease's "no oral modification" provision is thus no barrier to the survivability of the claim. Deerfield Communications Corp. v. Chesebrough-Ponds, Inc., 68 N.Y.2d at 956; Danann Realty Corp. v. Harris, 5 N.Y.2d 317 (1959) (where complaint states a cause of action for fraud, the parol evidence rule is not a bar to showing the fraud, despite an omnibus statement that the written instrument embodies the whole agreement, or that no representations have been made). Accordingly, Tenant's justifiable reliance is not barred by the lease.[5]

Nor is there any basis to Moving Defendants' bald and unsupported speculation that Tenant "opted" not to exercise its lease extension option and chose instead to negotiate a new transaction. The Amended Complaint alleges that Landlord's and the Debtor's fraudulent acts and omissions

---

[4] Any attempt to argue that Channel Master Corp. did not address the issue of reasonable reliance must fail because the fraud claim was upheld in that case. See also Deerfield Comms. Corp. v. Chesebrough-Ponds, Inc., 68 N.Y.2d 954 (1986) (motion to dismiss fraud in the inducement properly denied where there is a representation of present fact collateral to contract, which was not barred by the contract's general merger clause); Graubard Mollen Dannett & Horowitz v. Moskovitz, 86 N.Y.2d 112 (1995) (denying motion to dismiss fraud claim based upon oral representation, even though it related to an agreement between the parties where, at the pleading stage, the elements of fraud were pled).

[5] Moving Defendants' cases do not hold otherwise. In Int'l Plaza Assoc., L.P. v. Lacher, 63 A.D.3d 527 (1st Dep't 2009), the misrepresentations directly related to the terms of the lease, i.e., acceptance of late payments and ability of the defendants to cure defaults, which was duplicative of the breach of contract claim. Here, the fraudulent conduct has nothing to do with the lease, and everything to do with Landlord's and the Debtor's lies and fraudulent misrepresentations and omissions. A.J.D. Bldg. LLC v. Ben-Harush, 227 A.D.3d 457 (1st Dep't 2024), concerned an action to recover under a written guaranty and whether the defendant's conduct was unequivocally referable to an alleged oral modification (for the purposes of satisfying the Statute of Frauds) sufficient to establish a defense. Here, Tenant's fraud claim is not within the Statute of Frauds as a matter of law. Channel Master Corp, supra.

lulled Tenant into not exercising its option (Amended Complaint, ¶¶ 81, 98, 99) which, it bears noting again, is presumed true.

Moving Defendants' reliance on <u>Odonata Ltd. v. Baja 137 LLC</u>, 206 A.D.3d 567 (1st Dep't 2022), for the proposition that Tenant cannot rely on an unsigned lease, is inapposite. The tenant in <u>Odonata</u> believed that he had an enforceable agreement under contract law and alleged reliance on a third amendment to lease that only it had signed; the landlord had not signed and returned the amendment. In finding reliance was not justified, the state court noted that "the amendment had to be approved by [landlord] and then signed by both parties" and that the requirement was "a constant thread throughout the parties' emails and negotiations." <u>Id.</u>, 206 A.D.3d at 569-570. Here, however, Tenant is not attempting to enforce a draft agreement or an agreement created through emails. Rather, the Amended Complaint alleges that Tenant relied on Landlord's and the Debtor's false and fraudulent unequivocal promises when it was lulled into not exercising its renewal option and forbore from relocation efforts.

Finally, Moving Defendants posit that the fraud claim based on Landlord's and the Debtor's fraudulent concealment must be dismissed because they had no duty to disclose anything to Tenant. Moving Defendants are actually arguing that they were free to (i) conceal from Tenant that, as early as February 2022, the Debtor was holding the lease extension and new long term lease hostage to his receipt of "illegal" brokerage commissions; (ii) conceal from Tenant their intra-family dispute and that the Debtor had been stripped of all authority to act on Landlord's behalf and that Rose had been appointed as the new "managing agent;" and (iii) deceive and mislead Tenant into believing that the Debtor continued to be Landlord's sole and exclusive representative and decision-maker from 2020-2023 when, in fact, he was not, <u>and they knew that</u>.

A duty to disclose arises where there is a special relationship of trust and confidence between the parties, which can arise out of a long-standing contractual relationship. Vladeck, Waldman, Elias & Engelhard, P.C. v. Paramount Leasehold, L.P., 46 Misc. 3d 1225(A) (Sup. Ct. N.Y. Co. 2015) (upholding fraudulent concealment claim based on tenant and landlord's 40-year leasehold relationship which created a duty to disclose); Barrett v. Freifeld, 64 A.D.3d 736 (2d Dep't 2009) (issue of fact whether parties had more than an arm's length relationship involving mere sale of pharmaceuticals). A duty to disclose will also be found where one party has superior knowledge of essential facts that renders non-disclosure inherently unfair. See Barrett, supra; Albion Alliance Mezzanine Fund, L.P. v. State St. Bank & Trust Co., 8 Misc. 3d 264 (Sup. Ct. N.Y. Co. 2003).

Here, Landlord and Tenant had a 20-year contractual relationship, and Moving Defendants had superior—indeed, exclusive—knowledge of their intra-family dispute with the Debtor, his demand for payment of "illegal" brokerage commissions, and his holding Tenant's transaction hostage. Having dealt exclusively with the Debtor for 20 years, Tenant had no reason to question his sole decision making authority (actual or apparent) for Landlord, and no reason to check any alleged publicly available information to the contrary. Moving Defendants had a duty to disclose.

Nat. Union Fire Ins. Co. of Pittsburgh, P.A. v. Red Apple Group, Inc., 273 A.D.2d 140 (1st Dep't 2000), is not to the contrary. In that case, the fraud claim based on the insured's concealment of an eviction proceeding was dismissed because there was no allegation of a special or long-standing contractual relationship, and the insurance company had actual knowledge of the eviction proceeding, thereby requiring it to undertake an inquiry of available public records. Here, Landlord and Tenant had a 20-year contractual relationship and Tenant had no actual or

constructive notice of defendants' intra-family dispute or the Shareholder Action, including that the Debtor had been stripped of all authority to act on Landlord's behalf.

Moreover, and dispositive, no search of public records would have revealed Landlord's and the Debtor's concealment of the fact that as early as February 2022, the Shareholders would never approve Tenant's lease extension because the Debtor demanded he be paid "illegal" brokerage commissions, or that the lease extension documentation had never been drafted. Tenant had no knowledge of or access to Moving Defendants' and the Debtor's private, closed-door emails and communications, including concerning the "illegal" brokerage commissions and lease extension. What other private facts and communications they concealed will come out in discovery. One thing is clear—Moving Defendants' attempt to impose a duty on Tenant to search public records for things that it did not and could not know anything about, for the purposes of avoiding the consequences of their fraudulent concealment, should be rejected.

### C.    The Amended Complaint States a Claim For Promissory Estoppel

Moving Defendants argue that the promissory estoppel claim fails because there can be no justifiable reliance. Yet, as noted above, the Amended Complaint clearly alleges that Tenant relied on Landlord's and the Debtor's unequivocal promises when it was lulled into not exercising its renewal option and forbore from relocation efforts, forcing it to close its 20-year old dialysis facility. When these promises were made, Landlord and the Debtor knew that it would take a substantial amount of time for Tenant to secure alternate space and knew that Tenant's joint venture partnership was conditioned upon Tenant obtaining a long-term lease. They also knew that Tenant was legally required to meet statutory and other regulatory requirements regarding its facility, including continuing its operations and limitations on closure. Amended Complaint, ¶

41.[6] Armed with this knowledge, Landlord and the Debtor knew that Tenant would rely on their promises for a lease extension and that Tenant could not timely close and simply relocate its dialysis facility.

Moving Defendants also argue that the promissory estoppel claim fails because Tenant has not pled unconscionable injury. However, Tenant's unconscionable injury is as clear as it is undeniable: Tenant was forced to close its dialysis facility, and lost its 20 year old business, patients, and lucrative multi-million dollar joint venture with the world's preeminent dialysis facility operator with whom Tenant had already consummated four other joint venture partnerships in Staten Island, Queens and Long Island. Amended Complaint, ¶ 84. Tenant's losses are more than simply an injury resulting from losing a favorable rental rate or passing up other leasehold opportunities.

Under these circumstances, the Statute of Frauds will not preclude a claim of promissory estoppel. In re Hennel, 29 N.Y.3d 487, 494 (2017) ("where the elements of promissory estoppel are established, and the injury to the party who acted in reliance on the oral promise is so great that enforcement of the statute of frauds would be unconscionable, the promisor should be estopped from reliance on the statute of frauds"); Castellotti v. Free, 138 A.D.3d 198 (1st Dep't 2016) (if contract is barred by statute of frauds, promissory estoppel claim is viable in the limited set of circumstances where unconscionable injury results from the reliance placed on the alleged promise).

Furthermore, whether circumstances rise to the level of unconscionable injury should not be determined on the pleadings. Castellotti, supra, citing Buddman Distr., Inc. v. Labatt Importers,

---

[6] As a DOH regulated facility, it takes at least two years to locate new space, negotiate a new lease, make alterations for dialysis facility usage, and apply for and obtain the requisite DOH approvals to close the current facility, open a new facility, and transfer patients from one facility to another. Id., ¶ 72.

Inc., 91 A.D.2d 838 (4th Dep't 1982).[7] At the pleading stage, taking all allegations as true, a cause of action for promissory estoppel has been stated.

### D.     The Amended Complaint States a Claim For Breach of Contract

The breach of contract claim alleges that Landlord overcharged Tenant rent each month based on artificially and improperly inflated amounts in violation of § 78.5.2 of the lease. This section provides that Tenant's option lease renewal rent would be based on the aggregate amount of rents payable by all building tenants in the Building during the year immediately preceding Tenant's exercise of its option, and Landlord could disregard any lease agreement which it reasonably believed was not reflective of the then current fair market rental value of other comparable building office space. Amended Complaint ¶55. Tenant alleges that Landlord improperly disregarded all building-tenant leases below $100 per square foot, and overcharged Tenant rent each month.[8]

Moving Defendants do not dispute the overcharge. They instead argue that the claim is barred by the six-year Statute of Limitations. However, the overcharge occurred monthly during

---

[7] Moving Defendants' cases are inapposite because they did not concern "unconscionable injury," but with expectation damages from the non-performance of an unenforceable oral agreement. See Wolet Capital Corp. v. Walmart Inc., 2021 U.S. Dist. LEXIS 13406 (S.D.N.Y. Jan. 25, 2021) (expectation damages from non-performance of unenforceable oral agreement); Preferred Const., Inc. v. Patriot Org. Inc., 64 Misc. 3d 1222(A) (Sup. Ct. Suffolk Co. 2019) (injury alleged is same as breach of contract damages); Darby Trading, Inc. v. Shell International Trading & Shipping Co., 568 F. Supp. 2d 329, 341 (S.D.N.Y. 2008) (expectation damages for breach of oral contract); Buckley v. Shaw, 289 N.Y. 133, 139 (1942) (breach of contract damages). Here, Tenant's injuries are separate and apart from any damages flowing from a breach of contract.

[8] The "reasonableness" of Landlord's "belief" cannot be determined on a motion to dismiss. Hermitage Ins. Co. v. Zaidman, 107 A.D.3d 579, 580 (1st Dep't 2013) ("issue of fact exists as to whether Sabina reasonably believed that no claim would be asserted against her. . . ."); Winstead v. Uniondale Union Free Sch. Dist., 170 A.D.2d 500, 503 (2d Dep't 1991) ("[W]hether such belief was, in fact, reasonable under all the circumstances is ordinarily not a question of law. 'Ordinarily, the reasonableness of an insured's belief of nonliability is considered an issue of fact and not one of law.'"); Christie's Inc. v. SWCA, Inc., 22 Misc. 3d 380, 384-85 (Sup. Ct. N.Y. Co. 2008) (party's "reasonable belief" was an issue of fact).

the six years preceding the commencement of the action. At most, Tenant would be precluded from recovering rent overcharges greater than six years prior to the commencement of this action. Thus, the assertion that rent was fixed as of April 11, 2018 is not dispositive.[9]

Nor is there any basis to find that the breach of contract claim was waived by the Lease Extension's acknowledgment provision. The provision, which Landlord does not cite to in full, states:

> As a material inducement to Owner to execute this Agreement, Tenant hereby acknowledges and represents that, ***to Tenant's actual knowledge***, Owner is not in default of any of the terms, covenants, provisions, warranties, representations and conditions of the Lease through the date hereof and that there are no offsets or defenses thereto.

Ex. 2 to <u>Chubak Decl.</u> (emphasis added).

Moving Defendants submit no evidence of Tenant's "actual knowledge" of the rent overcharges at the time the Lease Extension was signed, and therefore, there is no waiver of any such claim by Tenant.

### E.     <u>Landlord's Corporate Veil Can Be Pierced</u>

To pierce the corporate veil, a plaintiff must allege that (1) the owners exercised complete domination and control of the corporation with respect to the transaction attacked; and (2) such domination was used to commit a fraud or wrong against the plaintiff, resulting in the plaintiff's injury. <u>Etage Real Estate LLC v. Stern</u>, 211 A.D.3d 632 (1st Dep't 2022). Factors to be considered in determining whether an individual has abused the privilege of doing business in the

---

[9] Moving Defendants' use of the original complaint as a conclusive admission that rent was fixed as of April 11, 2018 is improper. At best, a prior pleading is an informal judicial admission which "is no longer a conclusive judicial admission." <u>Tho Dinh Tran v. Alphonse Hotel Corp.</u>, 281 F.3d 23, 32 (2d Cir. 2002) (overruled on other grounds); <u>Phillips v. City of Middletown</u>, 2018 U.S. Dist. LEXIS 163308 (S.D.N.Y. Sept. 24 2021) (admissions in original complaint are no longer conclusive judicial admissions).

corporate or LLC form include the failure to adhere to LLC formalities, inadequate capitalization, commingling of assets, and the personal use of LLC funds. International Credit Brokerage Co., Inc. v. Agapov, 249 A.D.2d 77 (1st Dep't 1998); Forum Ins. Co. v. Texarkoma Transp. Co., 229 A.D.2d 341 (1st Dep't 1996).

"Additionally, the corporate veil will be pierced to achieve equity, even absent fraud, when a corporation has been so dominated by an individual or another corporation and its separate entity so ignored that it primarily transacts the dominator's business instead of its own and can be called the other's alter ego." Olivieri Constr. Corp. v. WN Weaver St., LLC, 144 A.D.3d 765, 766 (2d Dep't 2016). Whether to pierce a corporate veil is usually fact intensive, and dismissal is generally inappropriate on a pre-answer, pre-discovery motion to dismiss. Cortlandt St. Recovery Corp. v Bonderman, 31 N.Y.3d 30 (2018).

Here, the Amended Complaint's well-pled veil piercing allegations are based on the Shareholders' own affidavits and emails in the Shareholder Action, and the allegations in the Dissolution Proceeding which show that for years, Landlord had no annual shareholders meetings, no elections of officers or directors, no board of directors, no bi-annual statements filed with the New York Secretary of State, inadequate books and records, hundreds of intercompany transfers, and commingled family resources and assets. They also show that all or some Shareholders used millions of dollars in Landlord's funds to pay personal expenses and made unauthorized "loans" to their other companies without proper documentation. Teele Decl., Ex. C, ¶¶ 11, 12, 14, 15, 33-45, 382-387; Chubak Decl., Ex. 6, at ¶¶ 3, 5, 16-18, 25-26, 72-73, 82, 84, 86-87, 89, 91, 93, 95.

The Shareholders knew about this and acquiesced in, fostered, aided and abetted, permitted, consented and benefitted from such conduct. As the Debtor admitted in the Dissolution Proceeding at Teele Decl., Ex. C, ¶ 385:

When one Entity requires funding, another Entity simply issues it an undocumented "loan," and it is recorded on the Entities' financials. When the loaning Entity later requires funds, it then receives a loan from another Entity, and so on. This cycle constantly repeats itself amongst the Entities.

The Debtor admitted at ¶ 387 that these loans are in the "hundreds of thousands, in some cases millions," and will never be paid back. The Shareholders knew, participated, and benefited from these shell game practices.

Based upon Shareholder Action filings, they also knew that the Debtor was negotiating with Tenant, knew that he was holding Tenant's lease extension hostage to his receipt of "illegal" brokerage commissions, and that the Debtor had been stripped of all authority. Amended Complaint, ¶ 140. And yet, they let the Debtor continue de facto control over Landlord, knowing his wrongful conduct, and causing Tenant to close its business and lose its joint venture partnership. Id., ¶¶ 150, 152, 155.

Moving Defendants cannot dispute these factual allegations, which clearly permits the piercing of Landlord's corporate veil. Instead, they assert a hyper-technical argument that Tenant engaged in "impermissible group pleading." However, the Amended Complaint's factual allegations are based upon the Shareholders' own allegations, made under oath, and specifically set forth the Debtor's and Moving Defendants' acts, omissions, and acquiescence, all of which can be further elicited in discovery. Moreover, the Bankruptcy Court in Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC, 2021 Bankr. LEXIS 2958, *26 (Bankr. S.D.N.Y. 2021), in addressing the argument of an impermissible group pleading under Rule 9(b) of the Federal Rules of Civil Procedure, stated:

…group pleading is permissible where, like here, the Complaint "informs each defendant of the nature of his or her alleged participation in the fraud." Id. "[N]o specific connection" between the fraudulent behavior and particular defendants is necessary

"where . . . defendants are insiders or affiliates." (Internal citations omitted).

Here, the Amended Complaint alleges the respective ownership percentage of the Shareholders, sets forth the wrongs committed by the Debtor and the Landlord, and asserts facts showing that the Shareholders "were aware of, acquiesced in, fostered, aided and abetted, permitted, consented to" the wrongs and benefited therefrom; and that the Shareholders "were aware of, acquiesced in, fostered, aided and abetted, permitted, consented to and knew" the Debtor was negotiating a new lease with Tenant, even after the Debtor was stripped of such authority. Amended Complaint, ¶¶22-33, 156-168.  As noted by Sec. Investor Prot. Corp., supra, "no one could have more information regarding the allegations in the Complaint than the [Shareholders] themselves. Id. at *27.

Moving Defendants next contend that veil piercing is inappropriate because the allegations are pled "upon information and belief."  Again, however, the source of Tenant's "information and belief" is pled—the Shareholders' and the Debtor's emails and public filings in the state court actions and made under oath.  Not only are the facts and inferences from these filings more than sufficient, but they demonstrate that the Shareholders knew about and helped Landlord to disregard its corporate form and formalities, misuse its funds, and continue to fraudulently "negotiate" the lease extension/new lease with Tenant.  This is more than sufficient to withstand a motion to dismiss.  See Cortland St. Recovery Corp. v. Hellas Telecom, S.A.R.L., 47 Misc. 3d 544, 572 fn. 11 (Sup. Ct. N.Y. Co. 2014) ("although a plaintiff is not required to state the details of an individual defendant's participation even in a fraud, where those details are peculiarly within the defendant's knowledge, the facts alleged at the motion to dismiss stage must at least be 'sufficient to permit a reasonable inference of the alleged conduct.'"); Elliot Assoc., L.P. v. Hayes, 141 F. Supp. 2d 344, 354 (S.D.N.Y. 2000) ("despite the generally rigid requirement that fraud be pleaded with

particularity, allegations may be based on information and belief when the facts are peculiarly within the opposing party's knowledge") citing <u>Wexner v. First Manhattan Co.</u>, 902 F.2d 169, 172 (2d Cir. 1990).

Finally, Stephen Perlbinder argues that he should be dismissed as a defendant because he allegedly sold his interest in Landlord in 2012. However, he is a named plaintiff in the Shareholder Action. The Debtor pleads in the Dissolution Proceeding that Stephen Perlbinder transferred his remaining 18% interest in Landlord to one of the defendant trusts <u>in 2020</u> (<u>Teele Decl.</u>, Ex. C; NYSCEF No. 1, ¶ 120. The Amended Complaint pleads the 2020 transfer at ¶ 29. Stephen was a shareholder while Landlord and the Debtor engaged in their fraudulent and otherwise wrongful conduct and can be held personally liable.

## II.     <u>THE COURT SHOULD NOT ABSTAIN FROM HEARING THIS ACTION</u>

### A.   <u>There is No Basis for Mandatory Abstention</u>

Moving Defendants argue the Court must abstain from hearing this action pursuant to 28 U.S.C. § 1334(c)(2). They are wrong as a matter of law. The statute provides that:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

Applying the express language of the statute, courts examine six requirements, each of which must be satisfied for mandatory abstention to apply: (1) the motion must be timely; (2) the proceeding must be based upon a state law claim or cause of action; (3) the proceeding must relate to a case under title 11 but not arise "under" title 11 or "in" a case under title 11; (4) the proceeding

could not have been commenced in a federal court absent jurisdiction under the Bankruptcy Code; (5) an action involving the same subject matter must have been commenced and is pending in a state court; and (6) the pending state court action can be timely adjudicated. <u>See</u> 28 U.S.C. § 1334(c)(2); <u>In re WP Realty Acquisition III LLC</u>, 626 B.R. 154, 161 (Bankr. S.D.N.Y. 2021) (setting forth the foregoing factors and finding that mandatory abstention is inapplicable where a single factor is not met); <u>In re Texaco Inc.</u>, 77 B.R. 433, 436-37 (Bankr. S.D.N.Y. 1987) (setting forth and applying the foregoing six factors, denying mandatory abstention). Critically, a movant is not entitled to mandatory abstention "if it fails to prove any one of the statutory requirements." <u>N.Y. City Emps. Ret. Sys. v. Bernard J. Ebbers, et al. (In re WorldCom, Inc. Sec. Litig.)</u>, 293 B.R. 308, 331 (S.D.N.Y. 2003) (emphasis added); <u>In re Dreier</u>, 438 B.R. 449, 457 (Bankr. S.D.N.Y. 2010) ("the failure to satisfy even one factor [required for mandatory abstention] will be fatal"). "A party is not entitled to mandatory abstention if it fails to prove any one of the statutory requirements." <u>In re Refco, Inc. Sec. Litig.</u>, 2008 WL 1827644, at *11 (S.D.N.Y. Apr.21, 2008) (citation and internal quotation marks omitted).

Several of these factors are not applicable here, and Moving Defendants therefore cannot show that abstention is warranted or appropriate. <u>Crucially, the state court action to which Moving Defendants' ask the Court to defer was dismissed on November 5, 2025, on the state court's own motion after the case was removed to this Court</u>. <u>See</u>, <u>Teele Decl.</u>, Ex. E.

### i. Tenant's Fraud Claims Against Landlord and Debtor Constitute a "Core" Proceeding

Mandatory abstention applies only where the proceeding is "related to a case under title 11 but not arising under title 11 or arising in a case under title 11." 28 U.S.C. § 1334(c)(2). Proceedings "arising under title 11 or arising in a case under title 11" are "core" proceedings, which bankruptcy courts may hear under 28 U.S.C. § 157(b)(1), while proceedings that are merely

"related to a case under title 11" are "non-core" proceedings. Therefore, mandatory abstention is inapplicable to core proceedings. See Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.), 304 F.3d 223, 232 (2d Cir. 2002) ("where a matter constitutes a core proceeding, the mandatory abstention provisions of section 1334(c)(2) are inapplicable") (emphasis added); In re WP Realty Acquisition III LLC, 626 B.R. at 159 (same); In re Tronox, 603 B.R. 712, 725 (Bankr. S.D.N.Y. 2019) (finding that mandatory abstention rules "plainly do not apply" in a core proceeding).

28 U.S.C. § 157(b)(2) provides that "core proceedings include, but are not limited to": (i) "matters concerning the administration of the estate"; (ii) "allowance or disallowance of claims against the estate"; (iii) "confirmations of plans"; and (iv) "other proceedings . . . affecting the debtor-creditor relationship." 28 U.S.C. § 157(b)(2)(A), (B), (L), (O). For matters not expressly referenced, a bankruptcy court "shall determine . . . whether a proceeding is a core proceeding." 28 U.S.C. § 157(b)(3). It is axiomatic that Tenant's fraud claims against Landlord and Debtor involve the "allowance or disallowance of claims against the estate" and is therefore a "core proceeding. It is equally obvious that this action involves the administration of the Debtor's estate inasmuch as the outcome of this proceeding will determine not only a significant claim against the Debtor and other parties, but whether that claim is dischargeable in bankruptcy. The non-debtor parties to this action are necessary parties, making it necessary for the Court to adjudicate Tenant's claims against the non-debtor defendants in order to adjudicate the Debtor's liability. And, of course, the state court case has been dismissed, so there is no "pending action" before another court to which this Court could defer should it decide that abstention were applicable.

### ii. Moving Defendants Have Consented to This Court's Jurisdiction

Each of the Moving Defendants filed proofs of claim against the Debtor. See Proofs of Claim Nos. 18, 22, 25, 26, 27. By filing proofs of claim, the Moving Defendants have submitted

to the Court's jurisdiction. See Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 57 (1989) (holding that by filing a proof of claim a creditor submits itself to the equitable jurisdiction of the bankruptcy court); see also In re Mercury Masonry Corp., 114 B.R. 35, 38 (Bankr. S.D.N.Y. 1990) (by filing a proof of claim, the non-debtor has submitted itself to this Court's jurisdiction for purposes of determining an adversary proceeding based on state law, "because a determination of the claims and objections set forth in the adversary proceeding would necessarily involve an adjudication of the validity and amount of the claim set forth in [the non-debtor's] proof of claim").

### B.    The Court Cannot Abstain or Remand this Action

#### i.    Permissive Abstention is Not Appropriate

Moving Defendants assert that the Court should abstain under 28 U.S.C. § 1334(c)(1) but fail to make any substantive argument in support of permissive abstention. However, it is apparent that abstention under section 1334 is not appropriate here. The state court action was dismissed on November 5, 2025, on the court's own motion after the case was removed to this Court. When considering whether to abstain as a matter of choice, courts may consider 12 non-exclusive factors:

> (1) the effect or lack thereof on the efficient administration of the [bankruptcy] estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [sic] [the court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

Osuji v. HSBC Bank, U.S.A., Nat'l Ass'n, 580 B.R. 605, 612 (E.D.N.Y. 2018).

In light of the dismissal of the state court action, none of these factors support abstention. Even before the case was dismissed, Tenant's claims against the Debtor and Moving Defendants could not have been severed and litigated separately. For these reasons, abstention under section 1334 is not appropriate.

### ii. The Court Should Not Remand the Action

Finally, remanding this action to the state court, as Moving Defendants request, is not possible for the simple reason that the state court action was dismissed. There simply isn't a court to which the case could be remanded. Moreover, Tenant's claims against the Debtor relate to his chapter 11 case. Thus, prior to the dismissal of the state court action, Tenant had the right to remove the state court action to this Court under, inter alia, 28 U.S.C. § 1452. As discussed above, the factors used by courts to evaluate requests for permissive abstention under section 1334 do not favor abstention, primarily due to the fact that the state court action has been dismissed.

### CONCLUSION

For the reasons stated herein, Plaintiff respectfully submits that the Moving Defendants' motion to dismiss the Complaint should be denied with prejudice.

Dated: November 19, 2025

Respectfully submitted,

**SILLS CUMMIS & GROSS P.C.**

/s/ *S. Jason Teele*
S. Jason Teele, Esq.
Mitchell D. Haddad, Esq.
Lori K. Sapir, Esq.
101 Park Avenue, 28th Floor
New York, New York 10178
T. (212) 643-7000
E. steele@sillscummis.com
    mhaddad@sillscummis.com
    lsapir@sillscummis.com

*Attorneys for Plaintiff*
*Replacement Associates, LLC*