**EXHIBIT D**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------X

STEPHEN PERLBINDER and ASTRID SABELLAROSA as Trustee of the ASR 2020 FAMILY TRUST and the STEPHEN PERLBINDER 2016 FAMILY TRUST F/B/O ASTRID SABELLAROSA, individually and derivatively on behalf of 210 EAST 86TH STREET CORP.,

                    Plaintiffs,

   -against-

BARTON MARK PERLBINDER,

                    Defendant.

   -and-

210 EAST 86th STREET CORP.,

                    Nominal Defendant.

-------------------------------------------X

Index No. 655732/2021

I.A.S. Pt. 3

Mot. Seq. No. 002

**AFFIRMATION OF EMERGENCY OF ADAM J. STEIN**

      **ADAM J. STEIN,** an attorney duly admitted to practice before the Courts of the State of New York, affirms the following to be true under penalty of perjury, pursuant to CPLR 2106:

      1.    I am a Partner at Stein Adler Dabah & Zelkowitz LLP, counsel for Plaintiffs in this action. I am fully familiar with the facts and circumstances set forth herein based upon discussions with my clients and review of the accompanying motion papers and documentary evidence.

      2.    I submit this Affirmation of Emergency in support of Plaintiffs' application: (i) pursuant to CPLR § 6401, for the appointment of a temporary receiver to manage the affairs of 210 East 86th Street Corp. (the "Company"), which owns and operates the mixed-use building located at 210 East 86th Street (the "Building"); and (ii) pursuant to CPLR § 6301, for an injunction enjoining (a) the Company from making loans, paying shareholder dividends, or other payments to or on behalf of shareholders or their affiliated entities without the consent of a majority of shareholders; and (b) Defendant Barton Mark Perlbinder—a mere 34% shareholder of the Company, who has neither been elected a director nor appointed an officer—from directing the

finances or entering into any agreements purporting to bind the Company without the consent of a majority of shareholders.

3. This action is one of four (4) pending lawsuits—two (2) in this IAS Part—between brothers Stephen Perlbinder ("Stephen") and Mark Perlbinder ("Mark") and/or their children concerning the management of jointly owned real estate holdings and trusts. The consistent theme in these lawsuits is Mark's self-dealing, commingling and unilateral siphoning of corporate assets, and failure to operate the real estate companies in accordance with New York law.

4. In the parallel lawsuit, this Court previously granted a temporary restraining order, preliminary injunction, and then held Mark in contempt given his unlawful attempts to pay himself (a mere 34% shareholder) unilateral distributions from The 400 East 54th Street Company LLC over the objection of 66% of shareholders. At the time, the Court could not have been any clearer:

> When you walk into this room, I follow the law of New York, not the law of the family.
> . . .
> I think the parties here have got to get used to the fact that I didn't invite you into this courtroom, but once you're here, I'm going to follow New York law of how corporations and LLC's work; and that does not mean, just because it's always been done this way, we just take money from one account and move it into another. We're going to operate under the agreements and under the corporate and LLC law of the State of New York, and what happened here clearly did not follow either of those things.

(NYSCEF Index No. 656259/2021, Doc. No. 223 at 29:17-19; 36:3-11).

5. The instant motion presents yet another emergency caused by Mark, this time, in connection with the 210 East 86th Street Corp., over which Mark likewise exercises *de facto* control despite being only a 34% shareholder. Given Mark's demand to personally profit from all aspects of the Building's operations, the Building, which contains medical offices, is now unsustainably roughly 67% vacant and cannot even retain a reputable real estate broker as a result of Mark's outrageous demands for personal brokerage commissions.

6. In the latest and most pressing instance of Mark's destructive behavior, the Building is on the verge of losing its largest remaining tenant in its medical offices—a dialysis center that provides a needed service to the community—because Mark has refused to authorize a renewal of the lease "unless and until" he is paid a personal brokerage commission even though he has no brokerage agreement with the Company, to which he owes fiduciary duties, and is not legally permitted to take commissions. Without this tenant, the Building's rent roll will shrink to roughly $2MM (down from $7.86MM in 2016) and the Company will be unable to meet its expenses.

7. As set forth in the accompanying papers, as a result of Mark's indefensible actions, the Building is a ticking time bomb that is facing numerous violations and safety issues. The Building's sidewalk vault (which supports the street above) is deteriorating, while Mark has unlawfully had tenants occupying space for a medical office with no Temporary Certificate of Occupancy. Mark has also failed to fully sprinkler the Building, resulting in DOB violations and fines since July 2019 that have not been rectified. Such hazards (and the potential for human harm and catastrophic liability) put the remaining shareholders of the Company at grave risk.

8. The Company's financial management is equally disastrous, with corporate funds being routinely misappropriated over the objection of 50% of shareholders. As detailed in the Complaint, the Company has made hundreds of *ad hoc* transfers to other entities controlled by Mark totaling approximately $24MM. The Company accountant—who had his CPA license stripped due to tax issues and admittedly facilitated a contempt of court with full knowledge—books these transfers as "loans" without any supporting documentation, authorizations, loan agreements, interest charges, maturity date, security, or indication of purpose. One of the entities that has received $2.5MM in "loans" owns no assets and pays for Mark's personal expenses, such as his chef, personal staff at his beach house, as well as his ex-wife's staff. Untangling these illegal "loans" in an after-the-fact accounting will be impracticable given that many of the borrower

entities have no ability to repay "loans," which consist of literally hundreds of jumbled intercompany transfers with no indication of purpose. When called to task, Mark blames the family accountant (as on the contempt application) or disputes the financial records.

9. In recent months, Plaintiffs have also discovered previously undisclosed "loans" (in one case, totaling up to six figures) to employees. The Company's practices and current situation are way outside the bounds of what is acceptable under New York law and cry out for judicial intervention.

10. Both in the Complaint and in correspondence thereafter, Plaintiff demanded that the transfer of funds out of the Company immediately cease; yet, the transfers have worsened. Since December 16, 2021, when the Company received a one-time infusion of $3MM in connection with a lease surrender, Mark has disregarded Plaintiffs' directives to reserve the funds and squandered the settlement by making *133 transfers* totaling $2,574,800 to 9 other entities. As a result, the Company now has only $282,629.85 on hand with insufficient funds available for necessary repairs and the costs of build-out in the event the Company actually leases its many vacant spaces.

11. Despite Plaintiffs' objections both in the Complaint and thereafter, Mark (who has not been elected a director or appointed an officer of the Company) has continued to enter into *ultra vires* contracts on behalf of the Company as to which 50% of shareholders object. Despite knowing the issue is the subject of a lawsuit, just last week, Mark signed on behalf of the Company to lease himself a new Porsche (with a value of over $115,000).

12. Stephen's side of the family owns 50% of the Company and has the equal right to participate in its management. They have for over a year demanded in writing that the Company's operations and finances be handled in accordance with laws and regulations, regardless of what

Mark claims may have happened in the past. Mark's practices put all shareholders at risk and must immediately end.

13. Plaintiffs respectfully request that the Court hear this application as soon as possible. Given that he is acting in an illegal manner, and will no doubt resist the Court stripping him of illegal *de facto* control of the Company and its funds, the Court should expect that Mark will attempt to stall. Yet, expedited relief is desperately needed so that the Building can cure violations and lease out its many vacant spaces without facing extortionate demands for commissions from Mark. Without relief, the Company will likely fall into an even more dire state and eventually fail.

14. In the interim and until the full application is heard, the Court should grant a temporary restraining order enjoining the Company from making loans, paying shareholder dividends, or other payments to or on behalf of shareholders or their affiliated entities without the consent of a majority of shareholders. The unilateral transfers currently being made are unauthorized under the BCL, amount to looting that makes a mockery of the management rights of Stephen's side of the family (which objects), and will be impracticable to reconstruct (with back interest) and to eventually collect upon. Should Mark oppose this relief—simply asking for the BCL to be followed—it will be yet further evidence of his disregard of law.

15. I thank the Court for its consideration of this Affirmation.

16. No prior application has been made for the relief sought herein.

Dated: New York, New York
October 18, 2022

ADAM J. STEIN