Jeffrey Chubak
Amini LLC
131 West 35th Street
12th Floor
New York, NY 10001
(212) 490-4700
jchubak@aminillc.com
Attorneys for Nondebtor Defendants

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| In re: <br> BARTON MARK PERLBINDER <br>                          Debtor <br> REPLACEMENT ASSOCIATES, LLC <br>                          Plaintiff <br> v. <br> BARTON MARK PERLBINDER et al <br>                          Defendants | Chapter 11 <br><br> 25-bk-73317-ast <br><br> 25-ap-08094-ast |
|---|---|

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

                                                                   **Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

ARGUMENT ................................................................................................................................. 1

I.      THE AMENDED COMPLAINT SHOULD BE DISMISSED AS AGAINST
        LANDLORD............................................................................................................... 1

        A.      The Breach of Lease Claim Should be Dismissed................................................... 1

        B.      The Fraud Claim Should be Dismissed ................................................................... 2

              1.      Plaintiff Fails to Plausibly Allege False Intent ............................................2

              2.      Plaintiff Fails to Plead Justifiable Reliance .................................................4

              3.      Plaintiff's Fraud-by-Omission Claim Fails...................................................6

        C.      The Promissory Estoppel Claim Should be Dismissed............................................ 8

II.     THE AMENDED COMPLAINT SHOULD BE DISMISSED AS AGAINST THE
        TRUSTEE DEFENDANTS AND STEPHEN PERLBINDER ......................................... 10

CONCLUSION............................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*102 Elmont Realty Corp. v. Berikal, Inc.*,
   11 Misc.3d 1071(A) (Dist. Ct. Nassau Co. 2006) ................................................................ 8

*About.com, Inc. v. Targetfirst, Inc.*,
   2002 WL 826953 (S.D.N.Y. April 30, 2002) ..................................................................... 5

*Alpha GmbH & Co. v. Shiffsbesitz KG v. BIP Indus. Co.*,
   25 A.D.3d 344 (1st Dep't 2006) ......................................................................................... 8

*Alpha GmbH & Co. v. Shiffsbesitz KG v. BIP Indus. Co.*,
   7 N.Y.3d 741 (2006) ........................................................................................................... 8

*Aris Indus. v. 1411 Trizechahn-Swig*,
   294 A.D.2d 107 (1st Dep't 2002) ....................................................................................... 5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................... 3

*Ashwood Cap., Inc. v. OTG Mgm't, Inc.*,
   99 A.D.3d 1 (2d Dep't 2012) ............................................................................................. 4

*Auchincloss v. Allen*,
   211 A.D.2d 417 (1st Dep't 1995) ....................................................................................... 7

*Billy v. Consolidated Mach. Tool Corp.*,
   51 N.Y.2d 152 (1980) ................................................................................................. 10, 11

*Buddman Distribs. v. Labatt Importers*,
   91 A.D.2d 838 (4th Dep't 1982) .................................................................................. 9, 10

*Castelloti v. Free*,
   138 A.D.3d 198 (1st Dep't 2016) ....................................................................................... 9

*Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*,
   4 N.Y.2d 403 (1958) ........................................................................................................... 5

*Christ the Rock World Restoration Church Int'l, Inc. v. Evangelical Christian Credit Union*,
   153 A.D.3d 1226 (2d Dep't 2017) ..................................................................................... 9

*Citibank, N.A. v. 88th Avenue Owner LLC*,
   2025 WL 2783357 (E.D.N.Y. Sept. 30, 2025) ................................................................... 4

ii

*Clearmont Prop., LLC v. Eisner*,
 58 A.D.3d 1052 (3d Dep't 2009) ............................................................................................... 8

*Exrp 14 Holdings LLC v. LS-14 Ave LLC*,
 2023 WL 4003693 (Sup. Ct. N.Y. Co. June 9, 2023) ................................................................ 9

*Exrp 14 Holdings LLC v. LS-14 Ave LLC*,
 228 A.D.3d 498 (1st Dep't 2024) .............................................................................................. 9

*F.D.I.C. v. U.S. Mortg. Corp.*,
 132 F. Supp. 3d 369 (E.D.N.Y. 2015) ....................................................................................... 2

*Goldman Copeland Assoc. v. Goodstein Bros. & Co.*,
 268 A.D.2d 370 (1st Dep't 2000) ......................................................................................... 1, 2

*Matter of Hennel*,
 29 N.Y.3d 487 (2017) ............................................................................................................... 9

*Int'l Plaza Assoc., L.P. v. Lacher*,
 63 A.D.3d 527 (1st Dept 2009).................................................................................................. 5

*Int'l Plaza Assoc., L.P. v. Lacher*,
 2008 WL 7211315 (Sup. Ct. N.Y. Co. April 14, 2008).............................................................. 5

*Komlossy v. Faruqi & Faruqi LLP*,
 2017 WL 722033 (S.D.N.Y. Feb. 23, 2017) ............................................................................. 9

*Komlossy v. Faruqi & Faruqi LLP*,
 714 F. App'x 11 (2d Cir. 2017) ................................................................................................. 9

*Laurel Hill Advisory Group, LLC v. American Stock Transfer & Trust Co., LLC*,
 112 A.D.3d 486 (1st Dep't 2013) ............................................................................................ 10

*Levine v. Yokell*,
 245 A.D.2d 138 (1st Dep't 1997) .............................................................................................. 7

*Marbax Assoc. Ltd. P'ship v. Resources Prop. Improvement Corp.*,
 196 A.D.2d 727 (1st Dep't 1993) ............................................................................................ 10

*Merex A.G. v. Fairchild Weston Sys., Inc.*,
 29 F.3d 821 (2d Cir. 1994)......................................................................................................... 8

*Morris v. New York State Dep't of Taxation and Finance*,
 82 N.Y.2d 135 (1993) .............................................................................................................. 10

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Red Apple Group, Inc.*,
 273 A.D.2d 140 (1st Dep't 2000) .............................................................................................. 7

*Odonata Ltd. v. Baja 137 LLC*,
 206 A.D.3d 567 (1st Dep't 2022) .................................................................................. 3, 4, 5

*Palm Beach Strategic Income, LP v. Salzman*,
 2011 WL 1655575 (E.D.N.Y. May 2, 2011) ........................................................................ 2

*Schiro v. Cemex, S.A.B. de C.V.*,
 396 F. Supp. 3d 283 (S.D.N.Y. 2019) ................................................................................ 12

*Schumaker v. Mather*,
 133 N.Y. 590 (1892) ............................................................................................................ 7

*Societe d'Assurance de l'Est SPRL v. Citigroup, Inc.*,
 2011 WL 4056306 (S.D.N.Y. Sept. 13, 2011) ................................................................... 12

*Truglia v. KFC Corp.*,
 692 F. Supp. 271 (S.D.N.Y. 1988) ..................................................................................... 10

*Vladeck, Waldman, Elias & Engelhard, P.C. v. Paramount Leasehold, L.P.*,
 46 Misc.3 1225(A) (Sup. Ct. N.Y. Co. 2015) ...................................................................... 6

*Webb v. Mentor Worldwide LLC*,
 453 F. Supp. 3d 550 (N.D.N.Y. 2020) ............................................................................... 12

*Wolet Capital Corp. v. Walmart*,
 2021 WL 242297 (S.D.N.Y. Jan. 25, 2021) ........................................................................ 9

**Statutes and Rules**

FRCP 12 .................................................................................................................................... 1

Defendants

- 210 East 86th Street Corp. ("Landlord"),

- Muffy Flouret as Trustee of the Muffy Flouret 2012 Family Trust and as Trustee of the Mark Perlbinder 2023 Irrevocable Trust,

- Stephen Perlbinder,

- Astrid Sabellarosa as Trustee of the Article 4 Trust under ASR 2020 Family Trust and as Trustee of the Stephen Perlbinder 2016 Family Trust F/B/O Astrid Sabellarosa, and

- Andrea Jo Stein as Trustee of the Article 4 Trust under AJS 2020 Family Trust and as Trustee of the Stephen Perlbinder 2016 Trust F/B/O Andrea Jo Stein

(together, the "Nondebtor Defendants") submit this reply memorandum of law in further support of their motion to dismiss the amended complaint (ECF #9-2, "Amended Complaint") as against them pursuant to FRCP 12(b)(6).[1]

## ARGUMENT

**I.     THE AMENDED COMPLAINT SHOULD BE DISMISSED AS AGAINST LANDLORD**

**A.     The Breach of Lease Claim Should be Dismissed**

Nondebtor Defendants argued the contract claim must be dismissed because the cause of action accrued over six years before this action commenced on September 13, 2024, when rent was fixed at the offending level by letter dated April 11, 2018. (ECF #7, "Moving Br." at 2, 5-6, citing *Goldman Copeland Assoc. v. Goodstein Bros. & Co.*, 268 A.D.2d 370, 371 (1st Dep't 2000) ("tenant's overcharge claim accrued upon its receipt of the first statement almost 12 years before it commenced this action"), ECF #8-3, "April 11, 2018 Letter", ECF #8-4, "Initial Complaint" ¶¶45, 147.)

---

[1] Nondebtor Defendants withdraw the branch of their motion seeking abstention or equitable remand, as the state court dismissed on the ground of removal (ECF #9-16) the day after this motion was filed.

1

Plaintiff does not address *Goldman Copeland*. No decision or other authority is cited for its argument that the cause of action accrued every month during the six years preceding the commencement of this action. (ECF #9 "Opposition Br." at 16-17.)

Plaintiff's argument that "use of the original complaint as a conclusive admission that rent was fixed as of April 11, 2018 is improper" (Opposition Br. at 17 n.9) fails. Plaintiff does not dispute (Moving Br. at 5, citing *Palm Beach Strategic Income, LP v. Salzman*, 2011 WL 1655575, at *5 (E.D.N.Y. May 2, 2011)) that the initial complaint is not a nullity, and that the allegations in same may be considered on a motion to dismiss where, as here, they are not even contradicted by the amended pleading.[2]

Dismissal may also be based upon the April 11, 2018 Letter itself, undisputed documentary evidence referred to within the pleading. *F.D.I.C. v. U.S. Mortg. Corp.*, 132 F. Supp. 3d 369, 380-81 (E.D.N.Y. 2015) (documentary evidence may be considered on motion to dismiss where it is undisputed and the pleading relies on same).

### B. The Fraud Claim Should be Dismissed

#### 1. Plaintiff Fails to Plausibly Allege False Intent

Nondebtor Defendants argued that the fraud claim should be dismissed, for failure to adequately plead that Debtor's alleged misrepresentations were made with false intent; more

---

[2] Amended Complaint ¶58 modified Initial Complaint ¶45 as follows: "~~By letter, dated April 11, 2018~~**Thereafter**, Plaintiff was advised by Landlord that it had determined that the fair market rental of the Premises, based on tenant leases then in occupancy of the Building for the prior year (March 2017- February 2018), was $112 per square foot". Amended Complaint ¶175 modified Initial Complaint ¶147 as follows: "~~By letter, dated April 11, 2018,~~Plaintiff was advised by Landlord that it had determined that the fair market rental of the Premises, based on tenant leases then in occupancy of the Building for the prior year ~~(March 2017- February 2018),~~ was $112 per square foot."

specifically, they explained false intent is not plausibly alleged,[3] given that the alleged scheme was for the Debtor to capture the broker commission from an eventual transaction for himself, which could not happen if a transaction did not close. (Moving Br. at 3, 7.)

In response, Plaintiff cites only Amended Complaint ¶¶139-53 in support of its argument that "Landlord and the Debtor knew at the time these representations were made that they would not be performed and/or they never intended to perform." (Opposition Br. at 8-9.)

But ¶¶139-53 do not "allow the court to draw the reasonable inference" that the Debtor made the alleged misrepresentations on behalf of Landlord with false intent. *Iqbal*, 556 U.S. at 678. Rather, ¶¶139-53 alleges that Ms. Sabellarosa, a minority shareholder of Landlord (e.g. Amended Complaint ¶¶29-31, ECF #8-6 ¶15) opposed Debtor's self-dealing and capturing broker commissions for himself; that the Debtor "was holding Plaintiff's lease extension agreement hostage to his receipt of … brokerage commissions and that the remaining defendants had all agreed to the terms of the extension"; and that Rose Assocites, which "was given exclusive authority to manage and lease space in the Building and to resolve any issues where there was a 50-50 deadlock between Landlord's shareholders", "never broke the 'deadlock' to move forward on that transaction, with or without paying Perlbinder a commission." Nothing therein reflects that the Debtor (the Landlord's "de facto" manager, per Amended Complaint ¶¶38, 156) had no intention of consummating a lease extension transaction.

---

[3] "Determining whether a Complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*.

Plaintiff cites *Odonata* for the proposition that its fraud claim must survive this motion. However, unlike in *Odonata*, here Landlord did not admit that Plaintiff's fraud claim "would likely survive dismissal." (ECF [#9-3](#9-3).) In addition, unlike in *Odonata* where the complaint alleged that the alleged misrepresentations were made to induce tenant to not seek out an alternative business premises to lease (Index 654257/2021 NYSCEF [#1](#1) ¶¶64-65), here the Plaintiff alleged that it did not trust that Debtor would ultimately deliver a long-term lease ([Moving Br.](#) at 9, quoting [Initial Complaint](#) ¶¶67, 86, [Amended Complaint](#) ¶¶95, 99), and that Debtor was motivated to consummate a transaction with Plaintiff so he could capture a broker commission for himself. "It is unclear what distinguishes this case from ordinary negotiations to modify a lease" (*Odonata Ltd. v. Baja 137 LLC*, 206 A.D.3d 567, 570 (1st Dep't 2022)), except that here Plaintiff had a second lease extension option that it declined to exercise.

2. Plaintiff Fails to Plead Justifiable Reliance

Nondebtor Defendants also argued ([Moving Br.](#) at 8-9) that the merger and no oral modification clause within the lease (ECF [#8-1](#8-1), "Lease" § 21[4]) defeated claims of justifiable reliance. *See also Citibank, N.A. v. 88th Avenue Owner LLC*, 2025 WL 2783357, at *5 (E.D.N.Y. Sept. 30, 2025) (citing *Ashwood Cap., Inc. v. OTG Mgm't, Inc.*, 99 A.D.3d 1, 9 (2d Dep't 2012)) ("Under New York law, where an agreement contains a clause prohibiting oral modification and a broad integration clause, any claim premised solely on a verbal promise is barred as a matter of law").

In response, Plaintiff cites *Sabo v. Delman*, 3 N.Y.2d 155 (1957) ([Opposition Br.](#) at 10-11) which held that a general merger clause does not bar a fraud in the inducement claim seeking to

---

[4] [Lease](#) § 21 provides that the lease "alone fully and completely expresses the agreement between Owner and Tenant and any executory agreement hereafter made shall be ineffective … unless such executory agreement is in writing and signed by the party against whom enforcement … is sought".

rescind a contract, or admission of parol evidence in support of such claim, and also *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 4 N.Y.2d 403, 408 (1958).

However, no fraud in the inducement claim is asserted here. *Channel Master* has no application because, as noted above, no facts are alleged to support the conclusory allegation that Debtor's alleged misrepresentations were made with false intent. *E.g. About.com, Inc. v. Targetfirst, Inc.*, 2002 WL 826953, at *4 (S.D.N.Y. April 30, 2002) (fraud claim dismissed on the ground that it "fails under *Channel Master*" for failure to plausibly allege false intent). And because the fraud claim is not "independent of contractual relations between the parties." 4 N.Y.2d at 408. The alleged misrepresentation is that "rent would be reduced to $108 per square foot" and the tenancy would be extended for "an additional five years" via a "formal lease modification agreement [that] had been drafted and would be forthcoming." (Amended Complaint ¶¶9-10.) Those alleged misrepresentations directly relate to the lease.

Plaintiff's effort to distinguish *Int'l Plaza* is unavailing. In *Int'l Plaza*, the motion court dismissed a fraud claim on the ground that the plaintiff had failed to plead "reasonable reliance in the face of written lease that contains a provision requiring any modification to be in writing signed by the landlord." *Int'l Plaza Assocs., L.P. v. Lacher*, 2008 WL 7211315 (Sup. Ct. N.Y. Co. April 14, 2008), *aff'd*, 63 A.D.3d 527, 528 (1st Dep't 2009) (citing *Aris Indus. v. 1411 Trizechahn-Swig*, 294 AD2d 107 (1st Dep't 2002)). Plaintiff attempts to distinguish it on the ground that there the "misrepresentations directly related to the terms of the lease, i.e., acceptance of late payments and the ability of the defendants to cure defaults", whereas "[h]ere, the fraudulent conduct has nothing to do with the lease, and everything to do with Landlord's and the Debtor's lies and fraudulent misrepresentations and omissions." (Opposition Br. at 11 n.5.) However, as noted above, the entire alleged misrepresentation is that rent would be reduced and that the tenancy would be

extended for at least five years by a lease modification agreement, as opposed to exercise of the second extension option. Thus, the alleged misrepresentations here "directly related to the terms of the lease."

Plaintiff attempts to distinguish *Odonata* on the ground that "[h]ere … Tenant is not attempting to enforce a draft agreement or an agreement created through emails. Rather, the Amended Complaint alleges that Tenant relied on Landlord's and the Debtor's false and fraudulent unequivocal promises." (Opposition Br. at 12.) That is a distinction without difference. *Int'l Plaza* makes clear that Lease § 21 (quoted above) defeats claims of reasonable reliance, regardless of whether reliance is alleged to be induced as a result of an unsigned agreement, email or oral representation.

### 3. Plaintiff's Fraud-by-Omission Claim Fails

Nondebtor Defendants argued that Plaintiff's claim for fraud-by-omission, based on alleged failure to disclose that the Debtor lacked full authority to negotiate on behalf of Landlord, fails for failure to plead a fiduciary relationship or other special relationship of trust and confidence, and the Perlbinder family dispute over the Debtor's authority was a matter of public record. (Moving Br. at 9-10.)

In response, Plaintiff argues that the Court should infer a "special relationship of trust and confidence" based on its "long-standing contractual relationship." (Opposition Br. at 13, citing *Vladeck, Waldman, Elias & Engelhard, P.C. v. Paramount Leasehold, L.P.*, 46 Misc.3 1225(A) (Sup. Ct. N.Y. Co. 2015).)

*Vladeck*, however, held fact issues were presented as to the existence of a special relationship, not based on duration of the tenancy, but rather because landlord's managing agent's president ("Gural") testified that tenant's principal "thought of Gural as a 'trusted friend'". Thus, *Vladeck* held, "if Gural viewed Anne Vladeck as a friend for forty years, then there is an issue of

6

fact as to whether Anne Vladeck viewed Gural in a similar way". *Id*. at *8. No authority is cited for the proposition that a "special relationship" may be based solely upon duration of the tenancy. Here, no allegation is made that Plaintiff's principal Dr. Kleiner viewed Debtor as a friend, or vice versa. Rather, Plaintiff alleged that the Debtor "overcharged" Plaintiff for the first lease extension (in 2018) (Amended Complaint ¶62), as the Debtor "routinely" did with "prospective tenants and renewals" (Amended Complaint ¶66), that Plaintiff did not trust that Debtor would ultimately deliver a long-term lease (Moving Br. at 9, quoting Initial Complaint ¶¶67, 86, Amended Complaint ¶¶95, 99) and that Plaintiff therefore engaged a real estate broker to negotiate same (Amended Complaint ¶64), all indicating an absence of trust and confidence placed in Debtor or Landlord by Plaintiff.

Plaintiff also claims the public nature of the shareholder action does not matter, because unlike in *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Red Apple Group, Inc.*, 273 A.D.2d 140, 141 (1st Dep't 2020), here Plaintiff lacked "actual knowledge" of the subject litigation. (Opposition Br. at 13.)

The Court need not even address this as failure to disclose cannot be the basis of a fraud claim absent a confidential or fiduciary relationship, discussed above. *Auchincloss v. Allen*, 211 A.D.2d 417 (1st Dep't 1995); *Levine v. Yokell*, 245 A.D.2d 138 (1st Dep't 1997).

In any event, Plaintiff's argument is based on the false premise that the *Nat'l Union* plaintiff had "actual knowledge" of the litigation that is the subject of the fraudulent concealment claim. Rather, it held only that "plaintiff's theory of fraudulent concealment presupposes that it had notice of some manner of dispute". 273 A.D.2d at 141 (emphasis added).

Further, the rule that public records forecloses a fraudulent concealment claim concerning same goes back over a century. *E.g. Schumaker v. Mather*, 133 N.Y. 590 (1892) ("the general rule

7

is that, if the facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him of knowing, by the exercise of ordinary intelligence, the truth, or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain …"). *See also Clearmont Prop., LLC v. Eisner*, 58 A.D.3d 1052, 1056 (3d Dep't 2009) ("Inasmuch as the true facts concerning the legal ownership of the property were easily ascertainable by reference to public records … plaintiffs causes of action sounding in fraud were properly dismissed"); *Alpha GmbH & Co. v. Shiffsbesitz KG v. BIP Indus. Co.*, 25 A.D.3d 344, 345 (1st Dep't 2006), *lv. dismissed*, 7 N.Y.3d 741 (2006) ("the allegedly concealed information, plaintiff's insolvency and dissolution, were matters of public record that defendant could have discovered by the exercise of ordinary diligence … In dismissing the defense, the motion court did not improperly decide an issue of fact … but merely applied law concerning fraudulent concealment and public records"); *102 Elmont Realty Corp. v. Berikal, Inc.*, 11 Misc.3d 1071(A) (Dist. Ct. Nassau Co. 2006) ("In *National Union* … the court rejected claims of fraudulent concealment concerning matters which were of public records").[5]

### C. The Promissory Estoppel Claim Should be Dismissed

Nondebtor Defendants argued the promissory estoppel claim should be dismissed for failure to plead reasonable reliance (for the same reason as the fraud claim, discussed above) and unconscionable injury. ([Moving Br.](#) at 10-12.)

---

[5] As to Plaintiff argument ([Opposition Br.](#) at 14) that "no search of public records would have revealed Landlord's … concealment of the fact that as early as February 2022, the Shareholders would never approve Tenant's lease extension because the Debtor demanded he be paid 'illegal' brokerage commissions, or that the lease extension documentation had never been drafted", that is irrelevant as the subject alleged misrepresentation/omission concerns the Debtor's ability to bind Landlord (e.g. [Amended Complaint](#) ¶195), not what sort of transaction the Shareholders would or would not approve.

8

Plaintiff's response is that its injury is unconscionable because it "was forced to close its dialysis facility, and lost its 20 year old business, patients and lucrative multi-million dollar joint venture with the world's preeminent dialysis facility operator". (Opposition Br. at 15.)

However, closure of the business and failure to capture profits from operation of same are exactly the type of injury that "flows naturally … from the non-performance of the unenforceable agreement." *Merex A.G. v. Fairchild Weston Sys., Inc.*, 29 F.3d 821, 824 (2d Cir. 1994) and is thus not unconscionable. Plaintiff does not claim egregious circumstances are presented. While Plaintiff may be frustrated by its inability to enforce its alleged oral agreement with Debtor, "what is unfair is not always unconscionable." *Matter of Hennel*, 29 N.Y.3d 487, 497 (2017). The promissory estoppel claim should therefore be dismissed, for failure to adequately plead unconscionable injury.

Plaintiff cites *Castelloti v. Free*, 138 A.D.3d 198, 205 (1st Dep't 2016), which cited *Buddman Distribs. v. Labatt Importers*, 91 A.D.2d 838, 839 (4th Dep't 1982)) for the proposition that "whether circumstances rise to the level of unconscionable injury should not be determined on the pleadings." (Opposition Br. at 15.)

At the outset, *Wolet Capital Corp. v. Walmart*, 2021 WL 242297 (S.D.N.Y. Jan. 25, 2021) held "[i]t is proper to dismiss the cause of action due to lack of an unconscionable injury on the pleadings alone." *Id.* at *13 (citing *Komlossy v. Faruqi & Faruqi LLP*, 2017 WL 722033, at *8 (S.D.N.Y. Feb. 23, 2017), *aff'd*, 714 F. App'x 11 (2d Cir. 2017)). Plaintiff does not address *Wolet*, except to state it is distinguishable because the injury alleged was "expectation damages from the non-performance of an unenforceable oral agreement." (Opposition Br. at 16 n.7.) No explanation is provided as to why Plaintiff's damages are any different.

Further, *Buddman* did not prohibit dismissal of promissory estoppel claims across the board. Rather, it held a fact issue was presented where "relying upon the defendant's promises, the plaintiff expended substantial sums … which it otherwise would not have had to expend." 91 A.D.2d at 839. That circumstance is not presented here. If Plaintiff's interpretation were adopted, no state court would ever dismiss a promissory estoppel claim on the ground of failure to plead unconscionable injury. Yet in *Exrp 14 Holdings LLC v. LS-14 Ave LLC*, 2023 WL 4003693, at *1 (Sup. Ct. N.Y. Co. June 9, 2023), *aff'd as modified*, 228 A.D.3d 498 (1st Dep't 2024), *Christ the Rock World Restoration Church Int'l, Inc. v. Evangelical Christian Credit Union*, 153 A.D.3d 1226, 1230 (2d Dep't 2017), *Laurel Hill Advisory Group, LLC v. American Stock Transfer & Trust Co., LLC*, 112 A.D.3d 486 (1st Dep't 2013) and *Marbax Assoc. Ltd. P'ship v. Resources Prop. Improvement Corp.*, 196 A.D.2d 727, 728 (1st Dep't 1993), appellate courts affirmed dismissal of a promissory estoppel claim on the ground of failure to plead unconscionable injury.

## II. THE AMENDED COMPLAINT SHOULD BE DISMISSED AS AGAINST THE TRUSTEE DEFENDANTS AND STEPHEN PERLBINDER

The claims against the Trustee defendants and Stephen Perlbinder are all premised upon veil piercing.

They moved to dismiss on the grounds of failure to plead complete domination by any one of them, arguing that each Trustee is a minority shareholder, Stephen Perlbinder is not even a shareholder and under *Billy v. Consolidated Mach. Tool Corp.*, 51 N.Y.2d 152, 163 (1980), the complete domination standard from *Morris v. New York State Dep't of Taxation and Finance*, 82 N.Y.2d 135, 141 (1993) requires "direct intervention" by them with respect the fraud or wrong by Landlord being attacked, which is not alleged. ([Moving Br.](#) at 4, 12-13.) *See also Truglia v. KFC Corp.*, 692 F. Supp. 271, 275 (S.D.N.Y. 1988), *aff'd*, 875 F.2d 308 (2d Cir. 1989) ("mere assertion that a corporate parent is or was involved in the decision-making process of its subsidiary, or that

it controlled the legitimate policies of its subsidiary, will not shift liabilities among distinct corporate entities").

Plaintiff does not address *Billy* or the failure to plead direct intervention. Instead, Plaintiff argues that group pleading is permitted because the Nondebtor Defendants are "insiders" and the pleading "informs each [of them] of the nature of his or her alleged participation in the fraud." (Opposition Br. at 19.)

According to Plaintiff (Opposition Br. at 20), it adequately pleaded participation by each Nondebtor Defendant since the Amended Complaint "alleges the respective ownership percentage of the Shareholders" (0% in the case of Stephen Perlbinder[6]) "and asserts facts showing that the Shareholders 'were aware of, acquiesced in, fostered, aided and abetted, permitted, consented to' the wrongs and benefitted therefrom; and that the Shareholders 'were aware of, acquiesced in, fostered, aided and abetted, permitted, consented to and knew' the Debtor was negotiating a new lease with Tenant, even after the Debtor was tripped of such authority."

This argument fails. The Amended Complaint does not explain how any of the Nondebtor Defendants consented to the wrongs of the Debtor, let alone benefitted therefrom. Indeed, the shareholder action was commenced January 27, 2022 (ECF #8-5) to put an end to such wrongs. Notably, this argument amounts to an admission that the "direct intervention" standard is not met. The subject allegations are that they "were aware of," "acquiesced", "permitted" and "consented to" (all passive) the Debtor's wrongs. No factual allegations are made to explain how any of them had "fostered" or "aided and abetted" (active) any such wrongs, such that these conclusory

---

[6] Plaintiff argues (Opposition Br. at 21) Stephen Perlbinder sold his interest in Landlord in 2020. However, Plaintiff alleged (Amended Complaint ¶¶28-29) he only held equity interests to 2012. Even had Plaintiff alleged he held equity interests through 2020, that is long before the supposed wrongful conduct by his codefendants.

11

allegations are not entitled to credit.[7]  "Courts in this Circuit have found that purely conclusory allegations of alter-ego status will … not survive a motion to dismiss.  *Webb v. Mentor Worldwide LLC*, 453 F. Supp. 3d 550, 562 (N.D.N.Y. 2020) (collecting cases).  *See also Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 303 n.11 (S.D.N.Y. 2019) (quoting *Societe d'Assurance de l'Est SPRL v. Citigroup, Inc.*, 2011 WL 4056306, at *5 (S.D.N.Y. Sept. 13, 2011)) ("Disregard of the corporate form is warranted only in extraordinary circumstances, and conclusory allegations will not suffice to defeat a motion to dismiss").

Further, the notion that Nondebtor Defendants passively let Debtor negotiate with Plaintiff for too long, leaving insufficient time for Plaintiff to negotiate with the actual managing agent, is contradicted by the pleading, which alleges (Amended Complaint ¶124) that Astrid Sabellarosa informed Plaintiff it should be negotiating with the managing agent in June 2023, eight months before expiration (Amended Complaint ¶109) of the lease.

## **CONCLUSION**

The Amended Complaint should be dismissed as against the Nondebtor Defendants.

---

[7] Plaintiff's argues the state court filings submitted "demonstrate that the Shareholders knew about and helped Landlord to disregard its corporate form and formalities, misuse its funds and continue to fraudulently 'negotiate' the lease extension/new lease with Tenant" (Opposition Br. at 20) such that its conclusory allegations made on information and belief are entitled to credit.  However, the state court filings do not demonstrate any such thing, and no explanation is provided for how they do.

Dated: New York, NY
November 25, 2025

Amini LLC

/s/ Jeffrey Chubak
Jeffrey Chubak
131 West 35th Street
12th Floor
New York, NY 10001
(212) 490-4700
jchubak@aminillc.com
Attorneys for the Nondebtor Defendants